(No. 18828.—

THE GARRETT BIBLICAL INSTITUTE, Appellee, *vs.* THE ELMHURST STATE BANK *et al.* Trustees, Appellants.

*Opinion filed June 23, 1928—Rehearing denied October 6, 1928.*

John R. O'Connor, Alben F. Bates, and Stephen D. Monahan, for appellants.

Walter W. Duft, and Newell Mecartney, for appellee.

Mr. Justice Farmer delivered the opinion of the court:

The Garrett Biblical Institute, a corporation, filed its bill in the circuit court of Cook county alleging it was the owner of certain real estate described; that said property is exempt from taxation but that the county court rendered judgment for its sale for delinquent taxes, and in 1918 tax deeds were issued conveying the property to Jacob Glos; that Glos in 1918 executed a trust deed to Walter A. Glos, Albert H. Glos successor in trust, conveying the property therein described. The bill alleges reasons why the tax deeds were null and void, and that the county court had no jurisdiction to render judgment against complainant for delinquent taxes. The Elmhurst State Bank as trustee, Albert H. Glos as trustee, and L. G. Marhoefer, were made defendants. The bill prayed that the tax deeds, and other conveyances made in pursuance of them, be canceled and set aside as clouds upon complainant's title. The Elmhurst State Bank and Albert H. Glos filed separate answers

denying complainant's ownership of the premises, claiming they were the owners of the premises, and denying "each and every material allegation in said bill of complaint contained not herein specifically admitted or confessed and avoided, and demands strict proof of all the allegations thereto." Replications were filed to the answers, and the cause was referred to a master in chancery to hear the evidence and report the same with his conclusions of law and fact. After hearing the testimony the master reported as his conclusions that all the facts alleged in the bill were proved, and recommended a decree setting aside the tax deeds without reimbursement. Objections filed by defendants to the master's report were overruled by him and were renewed as exceptions before the chancellor. They were overruled by the chancellor and a decree was entered in accordance with the prayer of the bill. The Elmhurst State Bank as trustee, and Albert H. Glos as trustee, prosecuted an appeal from that decree to this court.

Appellants say in their brief that the principal errors relied on for reversal are: (1) That the tax deeds were set aside without reimbursement; (2) that costs were taxed against appellants; (3) that the grantee in the tax deed was not made a party to the suit; (4) the finding that appellee was exempt from taxation; (5) the finding that appellee was the owner and in possession of the premises; (6) the setting aside of the trust deed from Jacob Glos to Albert H. Glos as trustee.

The first point argued is that appellee's charter violated the constitution of 1848, in force when the charter was granted, which constitution forbade that any preference "shall ever be given by law to any religious establishments, or modes of worship;" that it also violates the constitution of 1870, which provides (art. 2, sec. 3,) that "no person shall be required to attend or support any ministry or place of worship against his consent, nor shall any preference be given by law to any religious denomination or mode of wor-

ship;" that the charter also violates the first amendment to the Federal constitution, prohibiting making any law respecting the establishment of religion or prohibiting the free exercise thereof.

The charter of appellee was granted by the legislature in 1855, and is as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That Orrington Lunt, John W. Evans, Philo Judson, Grant Goodrich and Stephen P. Keys, and their successors in office, to be elected as hereinafter provided, be and are hereby constituted a body corporate and politic, under the name and style of the 'Garrett Biblical Institute,' and by that name and style shall have perpetual succession, with power to sue and be sued, implead and be impleaded, and shall be capable in law of taking and holding by gift, grant, devise or otherwise, and of purchasing, holding and conveying, both in law and equity, any estate or interest therein, real, personal or mixed, and shall have power to execute and fulfill all such trust as may be confided to said corporation, and to take, hold, use, manage, lease and dispose of all such trust property as may in any manner come to said corporation charged with any trust or trusts in conformity therewith; to have and to use a common seal and to alter the same at pleasure; to make and alter such by-laws as from time to time may be deemed necessary for the regulation of the proceedings of the trustees, the government of said institute, its affairs, servants and students; provided, such by-laws are not inconsistent with the constitution or laws of this State.

"Sec. 2. Said corporation shall have power to establish and maintain within the present bounds of the county of Cook a biblical institute, under the patronage and control of the Methodist Episcopal Church, and the persons hereinbefore mentioned as corporators shall constitute the first board of trustees, and by lot shall be divided into two

classes, the first class to consist of two trustees, who, and their successors, shall hold their office for four years; and the second shall consist of three trustees, who, and their successors, shall hold their office for two years from the approval of this act. Said trustees shall, however, respectively, hold their office until their successors are elected and qualified. The Rock River Annual Conference of the Methodist Episcopal Church, and in case of a division of said conference, then the annual conference within the bounds of which the said institute may be located, shall elect said trustees of said institute, hereafter to be chosen; all of which shall be members of said Methodist Episcopal Church, and three of them be members of said annual conference, and the remaining two of them be members of said church and residents within the present bounds of the county of Cook. In case of a vacancy in said board of trustees by death or otherwise, the said board of trustees may, by ballot, fill such vacancy by the election of such qualified person or persons, and such person or persons so elected shall hold their office until the next meeting of said annual conference, when such vacancy shall be filled by such conference. In case any of such trustees should at any time cease to be members of said Methodist Episcopal Church, they shall from thenceforth cease to be such trustees, and their place may be filled in the manner aforesaid.

"Sec. 3. Said trustees shall have power to appoint and at pleasure remove such professors and teachers in said institute as they shall see fit. Said professors and teachers shall constitute a board of instruction and may, with the trustees, elect a president thereof. Said trustees may confer the degree of Doctor of Divinity on such person or persons as they deem entitled thereto, on the recommendation of the board of instruction. Four of said trustees shall constitute a quorum for doing business.

"Sec. 4. Any annual conference of said Methodist Episcopal Church which shall declare itself and become a patron

of said institution, may appoint two of its members a visiting committee, who shall have power to participate in the examination of students of said institute and inquire into the manner of conducting said institute, and the teaching therein, and may meet with the board of trustees and submit to them such advice and recommendations as they may deem proper in regard to the management and usefulness of said institute.

"Sec. 5. The doctrines taught in said institution shall conform to and be in harmony with the doctrines held and maintained by the Methodist Episcopal Church, as embraced in her articles of religion; and said annual conference of said church within whose bounds said institution shall, as aforesaid, be situated, may at any time appoint a committee of not less than three members of said conference to inquire into the doctrines so taught and report their opinion thereon to said conference in the premises; and in case they shall report the teaching of doctrines in said institute contrary to said articles of religion, and said conference shall, on investigation, and from the evidence produced before them, be satisfied that such mis-teaching exists, they shall report that fact to said board of trustees, who shall thereupon remove the professor or professors, teacher or teachers so declared guilty thereof.

"Sec. 6. That all property of whatever kind or description, belonging to or owned by said corporation, or held in trust by any person or persons for the use thereof, shall forever be free from all taxation for any and all purposes.

"Sec. 7. This act to take effect and be in force from and after its passage, and to be deemed a public act." Approved February 15, 1855.

The charter was amended in 1865, as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That the trustees of the Garrett Biblical Institute in addition to the power of conferring the degree of Doctor of Divinity, shall

also have power to confer the degree of Bachelor of Divinity on such persons as they may deem entitled thereto, on the recommendation of the board of instruction of said institution.

"Sec. 2. The Rock River Annual Conference of the Methodist Episcopal Church may, at its next annual session elect an additional trustee of said corporation, who and his successors shall hold their office for four years respectively, and until their successors shall be elected, and who shall be residents of the county of Cook, and possess the same qualifications, and be liable to the same forfeitures of said office as trustees resident in the county of Cook, and elected under said original act of incorporation, and on and after the election of said trustee said incorporation shall consist of six trustees, four trustees, however, shall constitute a quorum for doing business. Said Rock River Conference, and in case of a division of said conference, then the conference of said Methodist Episcopal Church within whose bounds said institution shall be located shall elect the successors of said trustees.

"Sec. 3. This act shall take effect from and after its passage and be a public act." Approved February 14, 1865.

Appellants argue there is nothing in the charter to indicate that the Garrett Biblical Institute was chartered for either school, religious or charitable purposes, and that by exempting its property from taxation the State has compelled other tax-paying citizens to maintain an institution required to teach only doctrines held and maintained by the Methodist Episcopal Church in its articles of religion. There is no specific statement in the charter that appellee was chartered to conduct a school, but the object of the charter was stated to be to give power to appellee "to establish and maintain within the present bounds of the county of Cook a biblical institute, under the patronage and control of the Methodist Episcopal Church." The charter provides for the appointment of trustees, who are given power to

appoint and remove professors and teachers in the institution and power to confer degrees on persons they deem entitled thereto. The whole charter indicates clearly that it was its object to enable the trustees to establish an institution of learning. No one is required to attend the school who does not wish to do so. Attendance is purely voluntary, and none of the revenues derived from the public were devoted to the establishment or maintenance of the institution. The legislature granted a charter to the Northwestern University in 1851. Its property to the extent of 2000 acres of land was exempted from taxation. In 1855 the charter was amended, providing "that all property of whatever kind or description belonging to or owned by said corporation shall be forever free from taxation for any and all purposes." When that charter was granted and when it was amended the constitution of 1848, then in force, provided: "The property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for school, religious and charitable purposes, may be exempted from taxation." In *Northwestern University* v. *People,* 99 U. S. 309, the Supreme Court passed upon the provisions of the university's charter and the amendment to it exempting the university's property from taxation. The court held the exemptions were valid; that the legislature is the sole judge of the exemptions "necessary for school, religious and charitable purposes." In *Thomas* v. *Hurst Home Ins. Co.* 186 Ky. 178, the court said: "It is not for the court to question the reason, the justice nor the wisdom of the law-making power in the enactment of laws. It is the court's duty to interpret, not to make, the laws. Why the legislature should exempt companies such as appellee from this tax is a matter that must address itself to the legislative branch of the government."

The charter of appellee authorizes the establishment and maintenance of a school for the study of the Bible by

anyone who wishes to attend, regardless of religious denomination. It is not required that all doctrines of the Methodist Church shall be taught, but that no doctrines in conflict with the Methodist Episcopal Church or its articles of religion shall be taught. Authority to establish and conduct a school by any religious denomination—Protestant, Catholic or Jewish—is not giving preference to a religious denomination.

In *Northwestern University* v. *Hanberg,* 237 Ill. 185, the court considered the question whether the language of the university's charter and its amendment was broad enough to cover investments made since the amendment as being exempted from taxation. In the opinion the court called attention to the fact that the legislature in 1855 granted charters to various schools granting exemption from taxation. They number approximately a score or more. Some were placed under the control of different religious denominations and some were not. Some were granted total exemptions from taxation, some limited exemptions, and some were granted no exemptions at all. The General Assembly recognized the value and need of institutions of learning. If any body of men, whether of a religious denomination or not, would accept a charter for the establishment and conducting of an institution of learning at their own expense they were in many cases granted a charter exempting part or all of the property of the institution from taxation. The charters referred to, granted in 1855, show the legislature did not prefer any particular religious denomination or mode of worship. The General Assembly sought by the passage of those acts to serve the public good and not to give preference to any religious establishment or mode of worship, or to make any law respecting the subject of religion or prohibiting the free exercise thereof. It was not a violation of the State or Federal constitution to grant a charter for the establishment of an educational institution such as appellee, authorizing

the establishment and conducting of an educational institution, without requiring the public to be taxed for its support or restricting the students who might enter the school to those belonging to any particular denomination.

Prior to the adoption of the constitution of 1870 the legislature granted a charter to the Baptist Theological Union and exempted the institution's property from taxation. The school was to be established and maintained by the Baptist denomination, and no person could be a trustee who was not a member of that denomination. A special assessment for a local improvement was made against the property of the school, and the school claimed that under its charter the property was not liable for the assessment. That question was considered by this court in *City of Chicago* v. *Baptist Theological Union,* 115 Ill. 245, and the court held that the charter exempting the institution from taxation did not exempt it from special assessments for a local improvement. No question seems to have been raised in that case as to the validity of the provisions of the charter exempting the school from taxation but that was apparently treated as a valid exemption. The question considered and decided was whether the exemption from taxation included also exemption from special assessments for local improvements, and the court held it did not. The institution was placed by the charter under the control of the Baptist denomination, but that question was not raised in the case cited, and apparently both parties and the court treated the charter as a valid charter for the purposes granted.

The St. Francis Xavier Female Academy was established under an act of the legislature in 1847. In *People* v. *St. Francis Academy,* 233 Ill. 26, the right of the institution to exemption from taxation came before this court. The court held that the property owned and used exclusively for school purposes was exempt, except that property acquired by it after taxes became a lien was subject to tax

sale for the taxes becoming a lien before the property was acquired for school purposes. The statute exempted "all property of institutions of learning, including the real estate on which the institutions are located, not leased by such institutions or otherwise used with a view to profit." The property taxed was in the same enclosure as the buildings of the institution and was used as a playground and for no other purpose. The court held the use made of the property brought it within the exemptions of the statute, but as it had become subject to a lien for taxes before it was acquired by the school it was liable to the taxes, but that the property owned and used for school purposes before the purchase of that against which the tax had become a lien was not liable for the taxes.

It is practically universally recognized that in a Christian nation such as ours it is important to the public good that there should be schools not devoted entirely to training or stimulating the brain or intellect, but that such teaching may also be supplemented by training and building up the moral character and better impulses of the heart. The State can not, under the constitution, prefer one religious denomination or its teachings and require the public to contribute to its support, but it is not a violation of the constitution, either in spirit or letter, to authorize religious denominations to establish and conduct at their own expense, without cost to the public, schools for the development and moral improvement as well as the intellectual betterment of its students. Pursuing this policy in establishing institutions of learning, the State granted the right to religious denominations, without discrimination, to establish and maintain such institutions. In consideration of appellee undertaking the establishment and conduct of an institution of learning at its own expense it was granted exemption from taxation. The constitution of 1848 gave the State the right to exempt, in addition to State and county property, "such other property as the General Assembly may deem necessary for

school, religious and charitable purposes." The legislature was the sole judge for determining what was necessary to be exempted ·from taxation for school, religious and charitable purposes. The constitution was not violated by appellee's charter, for it made no law respecting an establishment of religion or prohibiting its free exercise, gave no preference to any religious establishment or mode of worship, and made no religious test a qualification for any office or public trust.

It is further objected that Jacob Glos, to whom the tax deeds set aside were issued, was not made a party to the suit, and that the decree is erroneous for that reason. The bill alleges Glos was the grantee in the tax deeds, and asks that they, and the trust deed made by him to the other defendants, be canceled and set aside. The decree finds the tax deeds were void and sets them aside. Of course, it is a well recognized general rule that in a chancery case a decree should not grant relief against a party who is not made a defendant and has not appeared in court. Glos was not made a defendant to the bill. He had executed trust deeds upon the property involved, to appellants. Each answered separately, denying that appellee is the owner or in possession of the property, and each answer alleges, "this defendant says that it is the owner of the said premises described in said bill of complaint." The master found and reported that the property was not subject to taxation, that the tax deeds issued were null and void, and that the county court had no jurisdiction over the subject matter for that reason. The master found and reported that the trust deeds from Glos to the trustees were null and void and recommended their cancellation. Defendants introduced in evidence estimates computed by the county clerk according to the provisions of section 224 of the Revenue law, showing the amount due the purchaser at the tax sale if he was entitled to be reimbursed. The Elmhurst State Bank and Albert H. Glos filed identically the same objections to the

master's report. Objection 10 was: "Because the master does not find, ascertain and report the amount to which this defendant will be entitled as reimbursement as a condition precedent to the setting aside of the tax deed." Objection 12 was: "Because the master does not in his report state an account showing the amount to which this defendant would be entitled upon setting aside the title of this defendant, showing the several items entering into said account, the rate of interest allowed and the time for which such interest was computed." The objections stood as exceptions before the chancellor, and the abstract shows that when they came up before the chancellor counsel for appellants stated: "This matter comes up upon the exceptions of the defendants to the report of William H. Dellenback, the master to whom this case was heretofore referred. In this case tax deeds owned by the defendants here were set aside without reimbursement, and our position is that reimbursement should have been allowed under the provisions of the Revenue law."

Appellants offered no proof of title in themselves. They claimed the right of reimbursement as a condition precedent to setting aside their alleged title under the provisions of section 224 of the Revenue act. Their claim in this respect was denied by the report of the master and the decree of the chancellor. If, as the court decreed and we have held herein, the property of appellee was exempt from taxation, then neither the purchaser at the tax sale nor his grantees would be entitled to reimbursement as a condition precedent to setting aside the tax deed. That situation is provided for by section 213 of the Revenue act, which requires the county collector to refund the amount paid for property sold which was not subject to taxation but does not require the owner of the exempt property to pay anything by way of reimbursement. While Jacob Glos was not made a party defendant to the bill, reimbursement was claimed by the trustees, to whom he had conveyed the prop-

erty. The claim was denied because the property was not subject to taxation and the county court had no jurisdiction to render judgment and order of sale for non-payment of taxes. That was the basis on which the claim for reimbursement was disallowed. It rendered void the tax deeds to the purchaser at the tax sale as well as the grantees of the purchaser. While Glos was a proper party to be made defendant to the bill, the right to reimbursement was set up and relied upon by his grantees under the trust deeds and was as fully presented before the court as if Glos had been made a party and set the claim up himself. If, as we have held, the property was not subject to taxation no other result could have obtained if Glos had set up and relied on the exemptions himself. The reversal and remandment for failure to make him a party could result in no other decree, after making him a party, than the one that was entered. The right to reimbursement was claimed by the trustees to whom he conveyed the property, and in setting up and relying on that claim they procured an adjudication upon the question as fully as Glos could have done himself. To that extent he was represented by appellants. While the rule is that relief should not be granted against a party who is not made a defendant to the bill, we do not think the law requires a reversal of this decree on that ground alone.

It is further objected by appellants that appellee did not prove it was in possession of the property. The master found and reported that the property was fenced by appellee and that it was the owner in fee and was in possession. The court so decreed, and we are of opinion the evidence sustains that finding.

We are of opinion the costs were properly taxed against appellants. In their defense they contested the validity of appellee's charter exempting the property from taxation and alleged that they were the owners of the property.

No errors are pointed out justifying or requiring a reversal of the decree, and it is affirmed. *Decree affirmed.*