CRYSTAL LIME & CEMENT CO. v. ROBBINS et al.

No. 7134.   Decided September 16, 1949.   (209 P. 2d 739.)

Rehearing Denied March 24, 1950.

See 61 C. J., Taxation, sec. 731. De facto corporate acts, see note, 97 A. L. R. 477. See, also, 13 Am. Jur. 861.

*E. L. Schoenhals*, Salt Lake City, *Golden W. Robbins*, Salt Lake City, for appellants.

*Cyrus G. Gatrell*, Salt Lake City, for respondents.

WOLFE, Justice.

Action by the plaintiff and respondent, Crystal Lime & Cement Co., against the defendants and appellants, Golden W. Robbins and his wife, Harriet J. K. Robbins to quiet title to the following decribed tract of real property: The Northwest quarter of the Northeast quarter, the North half of the Northwest quarter, and lots 2, 3 and 4 of Section 34, Township one North, Range one East, Salt Lake Meridian, situated in the County of Salt Lake, State of Utah.

The defendants in their answer to the complaint put in issue the ownership of the above tract, and in what they denominated a counterclaim sought to recover a judgment quieting title in them to the land described in the complaint, and also the following described parcel: The West one-half of Southeast quarter of Section 28, Township one North Range one East, Salt Lake Meridian, situated in the County of Salt Lake, State of Utah.

The plaintiff replied to the counterclaim denying the defendants' ownership of the parcel immediately above described, but did not ask for any affirmative relief as to it. The defendants base their claim of title to both of the above

described tracts on tax titles purchased from Salt Lake County. The plaintiff is the record title owner of both tracts. The defendants, H. J. Steiner and his wife Sophia R. Steiner, were impleaded by the defendants Robbins on the theory that they claimed some interest in the properties adverse to them. The Steiners entered a general denial of title in the Robbins, but claimed no title in themselves. Hereafter reference to the defendants will mean the defendants Robbins only. The court below quieted title to the first described tract, hereinafter referred to as the 145 acres, in the plaintiff and entered a decree declaring that the defendants Robbins have no right, title, or interest in the second described tract, hereinafter referred to as the 80 acres. No offer of reimbursement was made by the plaintiff for money expended by the defendants in paying the taxes on the properties, nor did the decree of the court require reimbursement, although proof was submitted as to the amount of these expenditures. The defendants contend, among other things, that the court erred in not requiring the plaintiff to reimburse them for the amount expended by them in paying the taxes on these properties.

It appears that the 145 acre tract described in the complaint was patented from the United States as the Consolidated Marble Placer Mining Claim, March 7, 1892, and the patent was recorded November 9, 1892. No contention is made that the 80 acre tract is or ever was a mining claim. Salt Lake County through its proper officers levied property taxes upon both tracts of land for a number of years. These taxes were paid by the plaintiff or by its predecessors in interest. Later, however, taxes levied by the county were not paid and the defendants purchased tax titles to both of the tracts at the May tax sale in 1943. Plaintiff was suspended as a corporation in 1943 for failure to pay the annual corporation tax but was reinstated July 25, 1946. The stock of the plaintiff corporation while it was suspended was purchased by the Steiners, and it was this group which secured its reinstatement. It appears that a majority of the

stock in the corporation is owned by H. J. Steiner; his wife, Sophia R. Steiner; Dean R. Steiner; and Cyrus Gatrell.

The lower court quieted title to the 145 tract in the plaintiff *apparently* on the theory that it was a mining claim and therefore was subject to assessment by the State Tax Commission rather than by the Salt Lake County Assessor, under 80-5-3, U. C. A. 1943, then R. S. Utah, 1933, 80-5-3, which declares that:

"* * * all mines and mining claims, and the value of metalliferous mines based on three times the annual net proceeds thereof as provided in section 80-5-56, and all other mines and mining claims and other valuable deposits, including lands containing coal or hydrocarbons, nonmetalliferous minerals underlying land the surface of which is owned by a person other that the owner of such minerals, all machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims and *the value of any surface use made of nonmetalliferous mining claims or mining property for other than mining purposes;* must be assessed by the state tax commission as hereinafter provided. All taxable property not required by the constitution or by law to be assessed by the state tax commission must be assessed by the county assessor of the several counties in which the same is situated. For the purposes of taxation all mills, reduction works and smelters used exclusively for the purpose of reducing or smelting the ores from a mine or mining claim by the owner thereof shall be deemed to be appurtenant to such mine or mining claim though the same is not upon such mine or mining claim." (Italics added.)

We used the word "apparently" in the preceding sentence because the sale of both tracts was subject to the same defect, viz., the absence of auditor's affidavits in proper form on the assessment roll. Had title to the 145 acres been quieted in the plaintiff on account of this defect, the lower court, no doubt, under the general equity rule prevailing in this state, would have required the plaintiff to reimburse the defendants for the taxes on the property they have paid to the county. See *Oregon Short Line R. Co.* v. *Hallock*, 41 Utah 378, 126 P. 394, and *Bolognese* v. *Anderson*, 87 Utah 455, 49 P. 2d 1034.

As to the 80 acres, it appears that the taxes were properly assessed, but that the auditor's "affidavit," although made in the exact language of Section 80-7-9 and 80-8-7, U. C. A. 1943, did not include a jurat when attached to the assessment book or roll. This defect existed in the years 1938 through 1941.

It will be noted that by Sec. 80-5-3, U. C. A. 1943, the value of any surface use made of nonmetalliferous mining claims or mining property *for other than mining purposes* must be assessed by the State Tax Commission. Hence, it would seem that even if the surface were developed into residential property so long as the character of the subsurface were mineral, the State Tax Commission and not the county assessor must assess the surface value as well as the mineral or mining value of the subsurface. It is not here necessary to decide which of the two agencies would assess if the subsurface lost its character as mineral lands. All we now need hold is that until there is proof that the land has lost its character as mineral land or mining property it is assessable by the State Tax Commission. That furthermore, where title is derived from the Federal government by the issuance of a patent as mining property there is a presumption that it is property of that character until it is proved otherwise. 36 Am. Jur. 372. In the instant case, the plaintiff introduced the original patent which describes the property as mining premises. There is substantially nothing in the record to indicate a change in the use of the land from the date of the patent until the time of the trial below. There is some evidence that in recent years mining activity has not been carried on, but rather that sunflowers have been seeded and are now growing upon the property. This is not sufficient to overthrow the presumption that arises from the original patent. While we are not prepared to say that property which has originally been patented as mining property will always be mining property for the purposes of taxation by this state, there is no substantial evidence in the record to

warrant a finding that this 145 acre parcel is no longer mining property. Nor is the plaintiff precluded from contending that this is mining property because it has not filed with the State Tax Commission a sworn statement giving the information required to be furnished to that commission by 80-5-59 and 80-5-60, U. C. A. 1943. The assessment of the property is not contingent upon the filing of this sworn statement.

It is contended by the defendants that even if the 145 acres was held by the lower court to be mining property, it should have required the plaintiff to reimburse them for the amount they expended in purchasing the tax title from the county as a condition to its entering a decree quieting title in the plaintiff. The plaintiff on the other hand, contends that while ordinarily reimbursement is required by the court as a condition to quieting title in the record owner, that reimbursement here was properly refused since there was not a valid assessment of the 145 acres during the years from 1938 to 1941 in that the State Tax Commission did not assess the property as required by statute; that the assessment made by the county assessor of Salt Lake County was void; and that the defendants in paying the taxes levied under these void assessments have not benefited the plaintiff in the least.

The plaintiff's contention must fail. This is not a case where taxes, under a void assessment, have been paid to a county other than where the property is situated, and as a consequence thereof, different governmental units have shared in the apportionment of the money thus paid than would have shared had the property been assessed in the proper county. It is important to note that in this case whether the 145 acres was assessed by the State Tax Commission or by the assessor of Salt Lake County, the taxes would be payable to the treasurer of Salt Lake County and would be apportioned to the same governmental units, viz. state, county, municipality, school district, etc., in exactly the same proportions in both instances. The only difference

which could result from the county assessing the property instead of the Tax Commission would be that the amount of taxes levied might not be the same.

Since the assessment made by the assessor of Salt Lake County was void, the State Tax Commission is not precluded from now making a proper assessment for those years it omitted to do so. However, should such a re-assessment be made, the amount of the taxes already paid would be credited toward the amount owing under the second assessment. Sec. 80-10-18, U. C. A. 1943, provides:

"When the county treasurer discovers that any property has been assessed more than once for the same year, he must collect only the tax justly due and make a return of the facts, under affidavit, to the county auditor."

Therefore, because payment of the taxes by the defendants upon the 145 acres has benefited the plaintiff, it is equitable that the latter be required to reimburse the defendants for the money thus paid as a condition to the granting of his prayer that title be quieted in him.

In *Squires* v. *Estey*, 33 Cal. App. 287, 165 P. 34, the court was confronted with a situation somewhat similar to the one at bar. The court required reimbursement, relying upon *Holland* v. *Hotchkiss*, 162 Cal. 366, 123 P. 258, L. R. A. 1915C, 492, which applied the broad principle that he who seeks equity must do equity. The court said that the most recent cases which are cited in *Holland* v. *Hotchkiss* as upholding the doctrine of reimbursement or which have been decided since,

"are cases in which the assessments and levies of taxes were void for irregularities as vital as those relied upon by the appellant in the case at bar, notwithstanding which the owners of the property going into a court of equity, seeking the equitable relief of a decree quieting their title as against void tax deeds, were required in each case to pay or offer to pay a sum equal to the taxes which would be justly due. *Couts* v. *Cornell*, 147 Cal. 560, 82 P. 194, 109 Am. St. Rep. 168; *Savings & Loan Soc.* v. *Burke*, 151 Cal. 616, 91 P. 504; *Campbell* v. *Canty*, 162 Cal. 382, 123 P. 266; *Johnson* v. *Canty*, 162 Cal. 391, 123 P. 263; *Cordano* v. *Kelsey*, 28 Cal. App. 9, 151 P. 391, 398."

The court further added that the respondent's right to recovery did not depend upon any section of the Code, but rested upon

"a principle of equity well established in the decisions of the courts long prior to the amendment of the Code." See also *Weyse* v. *Biedebach*, 86 Cal. App. 712, 261 P. 1086, 1092, and *H. & W. Pierce, Inc.* v. *Santa Barbara County*, 40 Cal. App. 302, 180 P. 641, affirming the rule of the Squires case; *Barker* v. *Mecartney*, 10 Kan. App. 130, 62 P. 439; *McAllaster* v. *Polenqueen*, 10 Kan. App. 140, 62 P. 440; and the cases cited by Mr. Justice McDonough in his dissenting opinion in *Shipp* v. *Sheffield*, 101 Utah 54, 62, 117 P. 2d 996.

We are aware of numerous cases holding that reimbursement will not be required when the tax for which the property has been sold is "invalid" or "void." The reason generally assigned for this refusal is that since there was no duty on the part of the record owner to pay the void or invalid tax, the tax title claimant in paying it acted as a volunteer and cannot now complain. See the cases cited in the notes at L. R. A. 1915C, 492, 503; 16 American and English Ann. Cs. 803, 804; 86 A. L. R. 1208, 1235. Some of these cases refused reimbursement because the land was not subject to taxation. *West* v. *Cameron*, 39 Kan. 736, 18 P. 894; *Machado* v. *Canty*, 18 Cal. App. 35, 122 P. 77; *Garrett Biblical Institute* v. *Elmhurst State Bank*, 331 Ill. 308, 163 N. E. 1. Other cases refused reimbursement because the record owner had already paid the taxes. *Gage* v. *Kaufman*, 133 U. S. 471, 10 S. Ct. 406, 33 L. Ed. 725; *Kent* v. *Auditor General*, 138 Mich. 605, 101 N. W. 805; *Glos* v. *Shedd*, 218 Ill. 209, 75 N. E. 887. In still other decisions reimbursement was not required because the assessment was defective due to an inadequate description of the property or because the assessment was made in the wrong name. It is thought that this last mentioned class of cases is contrary to those cited in the next preceding paragraph as there does not occur to us any distinction in the quality of the invalidity between those cases, on the one hand, where there was a failure to correctly follow the tax procedure in matters other than inadequately describing the

property assessed or assessing it in the wrong name, and, on the other hand, where the invalidity consisted of other omissions or non-conformity with the authorized tax procedure. As to the other classes of cases mentioned above where the land was not subject to taxation or the record title owner had already paid the taxes, reimbursement was properly refused since payment by the tax title claimant under those circumstances was clearly of no benefit to the record title owner. But when, as in the instant case, the property is subject to taxation and the tax title claimant has in good faith paid a tax which will be credited toward the amount justly due on the property, reimbursement should not be refused even though the assessment on which the tax was levied was void. If the amount of the taxes due under a valid assessment would be less than the amount paid by the tax title claimant under the void assessment, then reimbursement should only be required up to the amount which would be due had the property been correctly assessed.

It cannot be successfully urged against the defendant's position that they are strangers and intermeddlers who have voluntarily paid a tax which the plaintiff could not have been compelled to pay. *Weyse* v. *Biedebach,* supra, [86 Cal. App. 712, 261 P. 1092] required reimbursement

"regardless of the fact that defects and irregularities in the assessments might render the taxes uncollectible." *Squires* v. *Estey,* supra, is to the same effect.

The defendants are not interlopers but have acquired color of title through their quitclaim deed from the county.

We hold, therefore, that the plaintiff should be required to reimburse the defendants for the amount expended by them in purchasing their tax title to the 145 acres from the county, exclusive of any premium the defendants might have paid, but only up to that amount which would have been due had the property been properly assessed by the Tax Commission during those years. Because it may be

some time before the State Tax Commission makes an assessment for those years it omitted to do so, if it ever makes an assessment at all, the lower court should fashion the relief granted to the parties to meet this exigency. It would work an injustice on the plaintiff to delay entering a decree quieting title in it until the Tax Commission acts. The lower court, could for instance, require the plaintiff to reimburse the defendants for the amount paid by them and if there were any likelihood that the assessment for those back years, if and when made by the Tax Commission, would be substantially less than that made by the county assessor, exact from defendants assurance that the defendants would repay to the plaintiff the difference.

Turning our attention now to the 80 acres, the "counterclaim" of the defendants which introduced into the case the issue of ownership of the 80 acre tract, is not a counterclaim under our code (Sec. 104-9-2, U. C. A. 1943). The 80 acres is entirely separate and distinct from that described in the complaint; it does not arise out of any transaction set forth in the complaint as a foundation for the plaintiff's claim nor is it connected with the subject of the action; and the causes are not founded upon contractual relationships between the litigants. The decision upon the counterclaim would not defeat, qualify or affect a decision on the complaint. 47 Am. Jur. 745, Sec. 47. They are as separate as if instituted as individual suits.

The defendants at the trial, before any evidence was offered as to the 80 acres, moved to dismiss their counterclaim as to that property, as well they might, for it was apparent that the plaintiff by its reply might defeat them in their action to have the title quieted and yet escape reimbursement. The defendants saw that if their counterclaim went to trial they might be trapped, that is, have a judgment against them that they had no interest in the property which would forever preclude them as to the plaintiff, and yet obtain no reimbursement, and under *Fisher* v. *Wright*, 101 Utah 469, 123 P. 2d 703, be unable to bring a suit against

the plaintiff for the money invested in the deed. Hence they moved for a dismissal. To this motion the plaintiff objected. The plaintiff sought no affirmative relief in its "reply." The "reply" must be treated as if it were an answer to a complaint. Then as to the 80 acres the defendant was in effect a plaintiff and the plaintiff a defendant. Sec. 104-29-1, U. C. A. 1943, permits dismissal by the plaintiff any time before trial if there is no affirmative relief or counter-claim sought by the defendant.

The Utah cases hold, as has been pointed out, that if affirmative relief is granted the original title holder, then reimbursement of the tax purchaser is in order. Unfortunately it has been held in this jurisdiction that a defendant in an action to quiet title may simply deny the plaintiff's claim of title and refrain from asking to have his (defendant's) title or interest adjudicated. Such tactics in pleading were questioned in the concurring opinion in the case of *Mercur Coalition Mining Co.* v. *Cannon,* 112 Utah 13, 184 P. 2d 341, in view of 104-57-1, U. C. A. 1943, which provides for the bringing of an action against a party who claims an estate or interest in real property adverse to the plaintiff "for the purpose of determining such adverse claim." The difficulty which arises in the present case is that the plaintiff, relying on the decree in this case, will never need to quiet title to the 80 acres as against defendants' tax title, and defendants will be without remedy to recover their taxes paid because as the law now stands their right to reimbursement for taxes paid arises out of the equitable jurisdiction of the court and is imposed as a condition to the court's decree quieting title. Unless the plaintiff brings an action to quiet title to the 80 acres which, as before stated, it need not now do, the defendant will not be furnished with an opportunity to ask for reimbursement. The defendants could not themselves institute an action for reimbursement. *Fisher* v. *Wright,* supra.

As soon as the pleadings revealed that the plaintiffs were seeking no affirmative relief as to the 80 acres, it should

have been apparent to the trial judge, in view of the pronouncements of this court, that he could not give the defendants adequate relief by way of reimbursement. By its denial of the motion the trial court, in effect, foreclosed the defendants of the opportunity of ever asserting the taxes and expenditures as against the plaintiff, thus enabling the plaintiff to avoid doing equity in spite of the benefit received of the payment of the taxes by defendants. The defendants' assignment of error number 12, "That the Court erred in not dismissing the case as to the 80 acres," is well taken.

Having decided that the lower court erred in denying the defendants' motion to dismiss their counterclaim as to the 80 acres, it becomes unnecessary to consider the question of whether the absence of a jurat on the auditor's "affidavit" attached to the assessment roll is a material defect in the tax sale procedure.

The defendants lastly contend that the corporate officers who instituted this suit and verified the complaint on behalf of the plaintiff corporation are not properly elected officers of that corporation. This contention cannot be here entertained. Questions of the validity of an election of officers are not matters which may be raised collaterally. *Jones* v. *Bonanza Min. & Milling Co.*, 32 Utah 440, 91 P. 273; *Charitable Ass'n* v. *Baldwin*, 1 Metc. 359, 42 Mass. 359; *Guaranty Loan Co.* v. *Fontanel*, 183 Cal. 1, 190 P. 177; *Jones* v. *Peck*, 63 Cal. App. 397, 218 P. 1030; *Consumers Salt Co.* v. *Riggins*, 208 Cal. 537, 282 P. 954; 2 Thompson Corporations, 3rd ed. sec. 1058; 2 Fletcher, Cyc. Corp. Sec. 371, 387.

The cause is remanded to the district court for further proceedings not inconsistent with this opinion. Costs to the appellants.

WADE and McDONOUGH, JJ., concur.

PRATT, Chief Justice (dissenting in part).

I concur except as indicated herein:

It is established as the rule in Utah that where the fee title holder seeks to quiet his title as against a tax title purchaser there need be no offer of reimbursement in order that such reimbursement may be granted by the Court. *Burton* v. *Hoover*, 93 Utah 498, 501, 74 P. 2d 652, 653:

"* * * the pleading need not allege and offer to repay defendant's investment in the property. The court of equity will make that a part of the total equity it administers to adjust the situation. It is a part of the remedy and not of the cause of action."

See also *Reeve* v. *Blatchley*, 106 Utah 259, 147 P. 2d 861; *Utah Lead Co.* v. *Piute County*, 92 Utah 1, 65 P. 2d 1190; *Bolognese* v. *Anderson*, 87 Utah 455, 49 P. 2d 1034, modifying 87 Utah 450, 44 P. 2d 706. The reason stated in the *Burton* case, supra, is as follows:

"* * * as the plaintiff has invoked the aid of a court of equity to vacate the tax deeds, he must do equity, * * * *at least to the extent to which the attempted purchase by defendants has relieved his property of liens,* he must, as a condition to obtaining such relief, reimburse the defendants, together with interest on such amount at the legal rate from the date of payment until repaid." (Italics added.)

The benefit which is attained by the original title holder in having the lien removed from his property, which lien arose from the owners duty to pay taxes, is the basis for reimbursement. See *Oregon Short Line R. Co.* v. *Hallock*, 41 Utah 378, 126 P. 394; *Holland* v. *Hotchkiss*, 162 Cal. 366, 123 P. 258, containing an extended discussion on this point; and L. R. A. 1915C, 492, note. 4 Cooley on Taxation, 4th Ed. 2967 in speaking of the reason that many states have adopted statutes *requiring* the owner to reimburse the tax sale purchaser has the following to say:

"* * * If the tax purchaser has, by his purchase, paid a charge which the state might fairly and justly make a legal one upon the land, and which the owner of the land ought himself to have paid

to the state, there is no reason why the state should not give to the purchaser, when he loses the expected benefit of the purchase, a remedy to recover the amount of the tax from the party who ought to have paid it."

Speaking of such statutes, the court in *State Finance Co.* v. *Beck,* 15 N. D. 374, 109 N. W. 357, 360, says:

"As indicated  *  *  *,  the court has inherent power, independent of such a statute, to do what the statute requires."

We should differentiate between the various types of situations to which the cases refer. In some instances such a distinction has not been made so that the rules frequently appear to be in conflict when in fact they are not.

One class of cases is those wherein the taxing body imposing the tax has the power and authority to levy the tax as it is levied, and the tax becomes a valid lien on the property, but through some failure or neglect in the tax sale procedure, the sale is rendered ineffective. Within this group are such cases as *Bolognese* v. *Anderson,* 87 Utah 450, 44 P. 2d 706, *Id.,* 87 Utah 455, 49 P. 2d 1034, rehearing, *Id.,* 97 Utah 136, 90 P. 2d 275; *Burton* v. *Hoover,* 93 Utah 498, 74 P. 2d 652; *Fisher* v. *Wright,* 101 Utah 469, 123 P. 2d 703; *Equitable Life & Casualty Ins. Co.* v. *Schoewe,* 105 Utah 569, 144 P. 2d 526, and many others. From cases with this type of fact situation there has arisen the doctrine that if the original title holder sues the tax sale purchaser to quiet title, he should be required to reimburse the tax sale purchaser under the equity maxim. "He who seeks equity must do equity." L. R. A. 1915C, 492, note at 494:

"It is well established  *  *  *,  that in granting affirmative relief against the holder of an invalid tax title by way of cancellation of tax certificates or deed, or quieting title to land, a court of equity should require, as a condition precedent to the granting of the relief, that the one seeking it should reimburse the tax title holder the equitable amount to which he is entitled for taxes paid on the land with interest. This rule is based on the maxim that he who seeks equity must do equity. So that, while the holder of the invalid tax title

might not be able to recover the taxes paid from the owner, he has a right in equity to reimbursement as a condition of granting equitable relief to the owner. *The rule of course presupposes that the taxes were valid."* (Italics added.)

### Knox v. Gaddis, 1 App. D. C. 336:

"It is a fundamental and familiar principle of equity jurisprudence that he who seeks equity must do equity; and there can be no better application of the maxim than the case in which a person seeks to vacate a tax sale as irregular and a tax deed as a cloud on title, without offering to reimburse to the purchaser at the tax sale or holder of the tax deed the taxes paid by him with all proper interest and costs. * * * The removal of a tax deed as a cloud on title is the equivalent of redemption from a lien through the process of a court of equity; and the redemption cannot be allowed without an offer of readiness on the part of the person seeking to redeem to do what ordinary fairness requires him to do."

See also *Holland* v. *Hotchkiss,* supra, and cases cited therein. The thing to be borne in mind is that in all these cases the tax is a valid tax, imposed by the proper taxing authority. The thing which renders the tax sale invalid is failure to conform strictly to the requirements of the statute authorizing the sale.

On the other hand, a group of cases to be distinguished from the group set out above, are those wherein the tax is void, such as an assessment by a governmental body not empowered to make the assessment; or the property sought to be assessed is property exempt from any taxation; or the tax levied is defective by reason of having a substantive defect which renders it null and void. The tax is utterly void and no duty arises to pay it. If the taxing body sought to foreclose a lien for such taxes on the theory it was given by statute they would fail by reason of a void as distinguished from an erroneous assessment.

The cases establishing the basis for giving reimbursement to the tax sale purchaser, by reason of the discharge of a valid subsisting lien and a consequent benefit to the title holder, do not hold good in the type of case where the

tax itself is the thing which is void. Under the latter circumstances there is no duty upon the title holder to reimburse where he seeks to remove a cloud or quiet title as against a tax sale purchaser. The payment of a void tax has not benefited him. He is under no duty to pay such taxes. The cases generally recognize this distinction. *Chicago, M. & St. P. R. Co.* v. *Kootenai County,* 33 Idaho 234, 192 P. 562, holds that if the assessment is void, a tender of the taxes is not a condition to the right to cancel a tax sale certificate. See also *Holland* v. *Hotchkiss,* supra; *Wilmerton* v. *Phillips,* 103 Ill. 78; *State Finance Co.* v. *Myers,* 16 N. D. 193, 112 N. W. 76; *Title Trust Co.* v. *Aylsworth,* 40 Or. 20, 28, 66 P. 276; *Eaton* v. *Bennett,* 10 N. D. 346, 87 N. W. 188; 4 Cooley on Taxation, 2957, sec. 1505, 4th ed.; *New Netherlands American Mortgage Bank* v. *Greene & Laurence County Drainage Dist.,* 199 Ark. 217, 133 S. W. 2d 446 and 51 Am. Jur. 893, Taxation, Sec. 1022 which expresses the rule as follows:

"There is no authority to order the sale of land for taxes which are neither due on nor collectible from the land."

The defendants have sought to limit this rule to cases wherein the property was exempt from any taxation. The authorities, however, do not support such a limitation. *Santa Clara County* v. *Southern Pac. R. Co.,* 118 U. S. 394, 6 S. Ct. 1132, 30 L. Ed. 118; *State of California* v. *Central Pac. R. Co.,* 127 U. S. 1, 8 S. Ct. 1073, 32 L. Ed. 150; *Chicago, M. & St. P. R. Co.* v. *Kootenai County,* supra; *Sioux City Bridge Co.* v. *Dakota County,* 61 Neb. 75, 85 N. W. 607; *Chicago & A. R. Co.* v. *People,* 129 Ill. 571, 22 N. E. 864, 25 N. E. 5; *People ex rel. Hudson & M. R. Co.* v. *State Board of Tax Commissioners,* 69 Misc. 1, 125 N. Y. S. 895; L. R. A. 1915C, note 492. These cases are all ones in which the assessing body had no jurisdiction to assess the tax, but authority was in another body, and the assessment as made was declared to be void. See also 61 C. J. 596, Taxation sec. 734 et seq.; 51 Am. Jur. 795, Taxation, sec. 895.

Now to the present situation—the one presented by the 145 acres in controversy: The property is subject to tax by reason of U..C. A. 1943, 80-5-3, quoted above, by the State Tax Commission, if, in fact, it is mining property. The tax, however, was assessed or levied by the county. It is a tax assessed or levied by the wrong taxing authority, but upon property which is subject to taxation by another governmental body, and which property has the duty to bear its proportionate share of the tax burden if properly levied.

The tax as levied comes within the defects noted above in relation to void taxes. If this is mining property (I am not sure that all the evidence available has been presented on this question of mining property) then there is no authority in the county to levy a tax on it the same as other real property, nor can the county levy any kind of a tax thereon and create a valid lien. Under the authorities the tax is void. To pay it is of no benefit to the original title holder. For all we know at present, under the solution proposed by the prevailing opinion, the original title holder may have to reimburse the purchaser for a sum that will never be properly levied against his property.

LATIMER, Justice (dissenting).

I dissent.

I concur in much of what is said in Mr. Justice Pratt's dissenting opinion but in view of the fact that I also dissent from the second proposition discussed in the prevailing opinion, I prefer to state my views.

On March 7, 1892, the United States Government issued a patent to 145 acres of land as the Consolidated Marble Placer Mining Claim. This 145 acre tract is one of the two particular pieces of property involved in this litigation. Title thereto subsequently passed to the Plaintiff, Crystal Lime & Cement Company. The authorities are generally to the effect that the issuance of a patent to mining property by the Federal Government is conclusive evidence of

the character of the real property at the time of patent. While there may be some exceptions to this rule in certain taxation matters, I am of the opinion that we cannot go behind the character of the land as evidenced by the patent unless we are clearly convinced that the owners have, by subsequent use, changed its nature. If we, therefore, start with the proposition that the 145 acre tract of land was mining property on the date the patent was issued, the trial court could not make a finding of a change in character on the date of the assessment unless defendants introduced evidence showing a change prior to that time. A search of the record indicates a lack of evidence to indicate any change in the character of the land from the date of patent until the time of trial. There is some evidence that in recent years mining activity has not been observed and that sunflowers have been seeded and are now growing on the property, but, in my opinion, this is not sufficient to overcome the presumption that arises from the original patent. In view of the absence of evidence the only conclusion the lower court could reach was that the 145 acre tract of land was mining property which, under the provisions of Section 80-5-3, U. C. A. 1943, the State Tax Commission was required to assess. As shown in the prevailing opinion the assessment was made by the county assessor, and such being the case, he had no right or authority to set the valuation and the assessment was a nullity.

The prevailing opinion cites a number of cases holding that a tax title purchaser is entitled to be reimbursed when a valid tax has been imposed upon the property but the sale is irregular. This court has affirmed and reaffirmed this rule, but the present action involves a separate and different principle. Here we have a situation where no valid assessment was levied.

Section 80-10-3, U. C. A. 1943, is as follows:

"Every tax upon real property is a lien *against the property assessed;* and every tax due upon improvements upon real estate assessed to others than the owner of the real estate is a lien upon

the land and improvements; which several liens attach as of the 1st day in January of each year." (Italics added.)

In cases where we have granted reimbursement to the purchaser, the property has been assessed and a tax lien has existed against the property. When a tax lien is impressed on the property and the tax title purchaser pays off the incumbrance, we have permitted reimbursement because the property has been relieved of the lien and the owner of the property has been benefited by the payment. In *Burton* v. *Hoover et al.*, 93 Utah 498, 74 P. 2d 652; we said:

> "For the reason stated, the judgment in favor of defendants is reversed, but as the plaintiff has invoked the aid of a court of equity to vacate the tax deeds, he must do equity, *and at least to the extent to which the attempted purchase by defendants has relieved his property of liens, he must, as a condition to obtaining such relief, reimburse the defendants,* together with interest on such amount at the legal rate from the date of payment until repaid." (Italics added.)

I have been unable to find any case in which this court has passed on the right of a purchaser of a tax sale to reimbursement for payments made to the county when an assessment has not been levied by the appropriate state agency. A reading of our statutes would indicate that there is no lien until such time as a valid assessment has been made. Other jurisdictions have passed on this question and have held that if the assessment is made by someone other than the agency designated by statute, the assessment is void, and no valid lien exists against the property. Cooley on Taxation, 4th Ed., Vol. 3, Sec. 1045, states the general rule to be:

> "An assessment, when taxes are to be levied upon a valuation, is obviously indispensable. It is required as the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follow it. *Without an assessment they have no support, and are nullities. The assessment is, therefore, the most important of all the proceedings in taxation, and the provisions to insure its accomplishing its office are commonly very full and particular. If there is no valid assessment, a tax sale of lands is a nullity.*

A want of assessment is not a mere irregularity remedied by a curative statute." (Italics added.)

The same author discusses the question of who may assess and in Section 1046 of the same work announces the general rule to be as follows:

"An assessment can be made only by an official or body designated by law to make it. *An attempted assessment by any person or board other than the person or board provided for by law is void,* and if a board of review empowered to appoint the assessors and afterwards to review their work should appoint any of its own members to that office, the appointment would be void, and an assessment made by the appointees would be illegal. The person or officer who has power to make an assessment in the first instance depends upon the terms of the state constitution or statutes * * *." (Italics added.)

In the case of *Chicago, M. & St. P. R. R. Co.* v. *Kootenai County,* 33 Idaho 234, 192 P. 562, the Idaho Supreme Court held an assessment void when levied by an agency not designated by the statute. The law of that state provided that operating property of all railroads, telegraph, telephone and electric current transmission lines should be assessed by the State Board of Equalization and that all property of any such company not included within the term "operating property" should be assessed by the county assessor. The county assessor, in making his assessment, included a certain portion of the property that should have been assessed by the Board of Equalization. The court held the assessment void and the subsequent proceedings of no force and effect.

Under the statutes of this state, it is mandatory that the assessment in question be made by the State Tax Commission and no other department of the state or the county has any authority to levy an assessment on this type of property. Where the duty to assess property is vested in the State Tax Commission, an attempted assessment by the county assessor is void and no liability for the payment of taxes is thereby imposed upon the property owner. Where the circumstances are such that the owner never was under

obligation to pay the sum charged to him, no enforceable lien exists against the property and the purchaser of the tax title is not entitled to have a court of equity assist him to the detriment of the owner.

There being no valid lien against this property, defendants by purchasing the tax title did not discharge any obligation of the plaintiff. Property owners are not required to pay taxes levied under a void assessment, and, if purchasers volunteer to pay money to purchase tax titles which are founded on void proceedings, they should not recover from the owner the amount so expended.

The second question involved in this appeal is whether or not defendants should have been permitted to dismiss what they designate to be their counterclaim. The sequence of events in this litigation were substantially these: Plaintiff commenced a suit to quiet title to 145 acres of ground. Defendants, apparently believing that plaintiff corporation could not maintain an action because its charter had been forfeited, answered plaintiff's complaint, counterclaimed to quiet title to a separate piece of property not mentioned in plaintiff's complaint and as part of this counterclaim prayed that defendants, Mr. & Mrs. H. J. Steiner, be required to intervene in the action and set up their claim to the property. As the basis for this procedure, defendants alleged that Mr. Steiner had verified the complaint. Plaintiff and interveners replied to the allegations of the so-called counterclaim and both matters proceeded to trial. After plaintiffs had rested, defendant Golden Robbins testified as to his purchase of the land and testified as to conversations between himself and one Junius S. Romney, former stockholder and director of the plaintiff corporation. The subject matter of this conversation concerned the refusal to pay taxes on the land and the desire of the directors of the corporation to abandon the property. In view of the fact that all parties acquiesced in the manner of litigating these issues, I make no comment as to the propriety of the procedure. At least by consent and acquiescence the court had

jurisdiction of the parties and the subject matter and no one questioned the joinder of actions. Conceding the prevailing opinion to be correct in holding that the two actions are separate and distinct, I, nevertheless, know of no reason why parties cannot stipulate to try actions together and have evidence common to both admitted at one time. The parties apparently adopted this method of procedure as there appears to have been no objection to the court proceeding of both matters.

One of the principal theories of the defendant was that plaintiff corporation had no right to proceed with the action and that if the property had not been lost to the corporation by the tax sale, the title thereto would vest in the directors as trustees of the corporation. This issue seems to be involved in both actions as I can see no reason why H. J. Steiner should be made a party merely because he verified a complaint as president of a corporation. Moreover, if Romney's disclaimer of interest was competent, it would affect both pieces of property. While admittedly the deeds and records of the county recorder's office dealing with the 80 acre tract of land had not been offered in evidence, the other matters referred to herein which were common to both causes of action had been gone into by the defendants. Accordingly, as I read the and interpret the record, the trial of both actions had commenced and under the provisions of Section 104-29-1, U. C. A. 1943, the dismissal was within the discretion of the judge. If in his opinion such dismissal would be in the furtherance of justice, then he was authorized to grant a motion to dismiss; otherwise not. I am not impressed that a dismissal at this stage would have been in the furtherance of justice. Neither am I convinced the judge abused his discretion in denying the motion.

Even were I to assume that the trial had not commenced and that defendants could dismiss their action as a matter of right, the statute specifically provides that this dismissal must be conditioned upon the payment of costs. Wit-

nesses had appeared in court to testify and there is no indication in the record that at the time defendants made their motion to dismiss they offered to reimburse the plaintiff and interpleaded defendants for any costs that might have been expended by them. The most that can be said for the motion is that after it appeared to defendants that they would be unsuccessful on their cause of action, they moved to dismiss without taking into consideration the requirements of the statute.