FISHER v. WRIGHT et al.

No. 6421. Decided March 23, 1942. (123 P. 2d 703.)

See 26 R. C. L. 393, 394 (8 Perm. Supp. p. 5769) ; 61 C. J. Taxation sec. 1707.

*J. R. Thomas,* of Salt Lake City, for appellant.

*Thomas & Thomas,* of Salt Lake City, for respondents.

PRATT, Justice.

This is an appeal upon the judgment roll: A demurrer was sustained to appellant's second amended complaint. Appellant stood upon that complaint, and the case was dismissed. This appeal followed.

We summarize some paragraphs of the complaint, and quote others as follows:

Paragraph II contains a description of the property; and this paragraph with paragraph III sets out respondents'' claim of title. They acquired their title in January 1925. Paragraph III ends with this sentence:

"That ever since the second day of January, 1925, defendants T. Tracy Wright and Cleeo D. Wright have been or have claimed to be the owners of said lands and still claim to be the owners thereof."

Prior to 1925 this happened (we quote from paragraph IV of the complaint) :

"That for the year 1922 the lands hereinabove in Paragraph II of this complaint described were duly and regularly assessed for taxes by the then taxing authorities of Wasatch County, Utah, and that

pursuant thereto a general state and county tax was duly and regularly levied upon said real property in the amount of $35.73. That said tax was never paid, and because thereof, pursuant to law, the said lands were sold by the then treasurer of Wasatch County, Utah, to said Wasatch County on the 21st day of December, 1922, for the said tax, penalty and costs, amounting in all to $37.30. That the then treasurer of said Wasatch County, on the 22nd day of December, 1922, issued certificate evidencing said sale to said county."

The balance of paragraph IV alleges as follows:

"That the said lands were for each of the years 1923, 1924, 1925 and 1926 duly assessed for taxes and taxes were duly levied thereon for each of said years. That no redemption from said tax sale was ever made within the time allowed by law, or at all, and that because thereof, pursuant to law, the then auditor of said Wasatch County on the 2nd day of May, 1927, made, issued and delivered to said Wasatch County deed conveying said lands to said county."

Paragraph V alleges as follows:

"That on the 31st day of May, 1927, the then commissioners of said Wasatch County sold the said lands, hereinabove in paragraph II of this complaint described, to George A. Fisher, plaintiff herein, for the amount of said 1922 tax sale, plus all penalties and costs and all taxes that had accrued on said lands, amounting in all to the sum of $103.66. That the said George A. Fisher, Plaintiff herein, paid said sum of $103.66 to said Wasatch County on the 31st day of May, 1927, and on said day received from said Wasatch County that certain quitclaim deed dated May 31, 1927, recorded May 31, 1927, in Book 17 of Deeds at Page 283 of the records of the Recorder of Wasatch County, Utah, conveying said lands to him."

Paragraph VI and VII allege the totals of taxes paid each year by appellant, upon the premises, to and including the 1937 taxes. We quote paragraphs VIII, IX, and X:

VIII. "That Plaintiff has many times demanded that the defendants repay to him the said taxes so paid by him for their benefit on said land so owned or claimed to be owned by them, but they have refused and still refuse to do so."

IX. "That this action is brought pursuant to the provisions of Sections 80-10-41 to 80-10-46, both inclusive, Revised Statutes of Utah 1933. That on the 14th day of May, 1940, being more than thirty

days prior to the commencement of this action, Plaintiff served written notice of his intention to foreclose his said tax liens on the defendants by enclosing the same in an envelope plainly addressed to each of them at their known addresses with postage thereon prepaid, a copy of which notice and proof of mailing the same are hereto attached and made a part of this complaint."

X. "That on the 2nd day of May, 1929, T. Tracy Wright and Cleeo D. Wright, two of the defendants herein, instituted an action in this court entitled 'T. Tracy Wright and Cleeo D. Wright, Plaintiffs, v. George A. Fisher, et al., Defendants,' wherein and whereby they claimed to be the owners of the lands and premises hereinabove in paragraph II of this second amended complaint described and sought to quiet title to the said lands in themselves against the tax title and claims of George A. Fisher, Plaintiff herein. That in said action Plaintiff herein duly filed his answer and amended answer denying the claims of the said T. Tracy Wright and Cleeo D. Wright, and by cross-complaint in said action set forth his claim to said lands based upon his said tax title acquired from Wasatch County, Utah, as hereinabove alleged. That the said T. Tracy Wright and Cleeo D. Wright interposed a general demurrer to said amended answer on the grounds that the amended answer did not state facts sufficient to constitute a defense to their complaint and that the said amended answer and affirmative defense were ambiguous, unintelligible and uncertain in that they did not set forth with sufficient particularity the facts essential to show validity of the tax deed and the facts required to show a compliance with the provisions of law necessary to subject the said lands to taxation and necessary to show a valid tax sale and a valid title derived through a tax sale. That the demurrer was by the court sustained. That thereafter a second amended answer and cross-complaint was duly filed by the said George A. Fisher in said cause. That thereafter by leave of the Court, the said George A. Fisher duly filed his third amended answer and cross-complaint, wherein and whereby he alleged, among other things, that he was informed and believed and upon information and belief alleged that there were irregularities in the procedure leading up to the sale of said lands to Wasatch County, Utah, after the assessment and levy of said taxes for the year 1922, and that by reason thereof he (George A. Fisher) demanded that the Plaintiffs in said cause either pay to him or deposit in Court the sum of money necessary to reimburse him in full for all taxes paid by him on said lands and that in the event of their falure so to do that the action be dismissed. That the said T. Tracy Wright and Cleeo D. Wright filed a demurrer to said third amended answer and cross-complaint. That the said T. Tracy Wright and Cleeo D. Wright refused to reimburse the said George

A. Fisher for the said taxes and on the 11th day of October, 1939, by their written stipulation on file in said cause agreed that their demurrer should be overruled and that the said action should be dismissed because of their failure and refusal to reimburse the defendant therein for the taxes so paid by him, and further stipulated that the defendant therein (George A. Fisher) should foreclose his lien on the said lands for the said taxes in the manner provided by law. That thereafter on the 30th day of October, 1939, the Fourth Judicial District Court in and for Wasatch County, Utah, made and entered its order overruling the said demurrer and dismissing the said action."

Sections 80-10-41 to 80-10-46, R. S. U. 1933, mentioned in paragraph IX of the complaint, are sections affording the county a method of collecting taxes by bringing a suit to foreclose the tax lien. It is appellant's theory that if the tax lien is transferred by the county to another, the foreclosure procedure follows it, or at least the courts have an inherent power to provide a remedy for the foreclosure of the lien.

Does the complaint state a cause of action? We think not.

Appellant alleges facts showing tax title in himself. He also alleges ownership in respondents. These allegations are accompanied by allegations showing that respondents failed to pay taxes and failed to reimburse appellant for taxes paid by a purchase from the county at a May sale and also paid subsequent to that time. There are no allegations showing any defect in appellant's tax title. The result is that after alleging generally an ownership in respondents, appellant defeats that allegation by specific allegations showing that such is not the case.

The confusion seems to have arisen out of the facts alleged in paragraph X of the complaint. This paragraph is quoted above. It does not allege as facts the condition of the tax title record, but alleges as facts the content of the pleadings in a previous case between the parties which respondents, as plaintiffs therein seeking to quiet title, permitted to be dismissed. The dismissal of that case was not an adjudication of good title in the respondents even though appellant as defendant therein seemed convinced that his title was

questionable. The dismissal of that case left the parties in their original position prior to the time the case was initiated. That position, as disclosed by the pleadings now before us, was the tax title in appellant. The stipulation that appellant might foreclose his tax lien did not change the dismissal to an adjudication of title in respondents. If the alleged facts of this case now before us show title in appellant—and they do—then there is no tax lien to be foreclosed. It has been wiped out by the procedure leading up to appellant's tax title.

The right in the county to foreclose its tax lien, sections 80-10-41 to 80-10-46, R. S. U. 1933, is cumulative only. If the county proceeds to satisfy its lien in the ordinary way —by sale, auditor's deed, and May sale—there is no necessity for even considering the foreclosure procedure, as the latter is just another way of accomplishing the same objective—collection of taxes. It is more than likely that the foreclosure procedure would not be adopted by the county except in a case where it discovered a fatal defect in the ordinary tax sale procedure, after an effort to carry out the latter had failed by reason of that defect.

Is the foreclosure proceeding provided by sections 80-10-41 to 80-10-46 available to a purchase of defective tax title? (See paragraph IV of the complaint.) We think not. Section 80-10-46, which reads:

"Such foreclosure shall not deprive any county of any other method or means provided for the collection or enforcement of any such taxes, but shall be deemed and construed as providing an additional or cumulative remedy for the collection of general taxes levied and assessed against the real estate in such county,"

clearly indicates that the remedy is one afforded to the county only. Furthermore, section 80-10-43 provides that the court in deciding the case shall "determine" the amount of "penalties," among other things. If a purchaser sought to exercise the right of foreclosure, there would be no need of any reference to penalties, as his right to recover would

be of the amount he expended in purchase from the county regardless of how it was divided up between taxes, penalties, and interest, plus, of course, subsequent taxes paid by him upon the lands in question. The purchaser does not recover penalties based upon the sums he has expended.

We are of the opinion that there is no error in the judgment of the lower court. It is affirmed. Costs to respondents.

MOFFAT, C. J., and LARSON, J., concur.

WOLFE, Justice (concurring).

I concur. The result in this case seems inevitable despite the unfortunate position in which Mr. Fisher finds himself. He has purchased land at a tax sale and finds he has acquired no title. In a former suit by the Wrights to quiet title against Fisher, the latter after two amended affirmative answers claiming title in him by virtue of a tax deed, filed a third amended answer in which in effect he confessed the weakness of his tax title and asked for reimbursement for money paid to the county for taxes, interest and penalties. It is alleged that the Wrights then stipulated that their action might be dismissed and Fisher could foreclose "his lien on the said lands for the taxes in the manner provided by law." Fisher is now in this suit attempting to do this. I think the inconsistencies in the complaint adverted to in the court's opinion may be ignored. Both parties treat the action as one to foreclose a lien in favor of the plaintiff for the purchase price he paid to the county for tax deed, plus subsequent taxes paid. I fear he has no lien. If he is attempting to foreclose under Sections 80-10-41 to 46, R. S. U. 1933, the answer is that such right, whichever its nature, is one given only to the county. It is somewhat difficult to see where any action giving the county a right to foreclose a tax lien has any office. Sec. 80-10-1, R. S. U. 1933, provides that a tax shall remain a lien until the tax is paid or "the property sold for the payment thereof." When prop-

erty is by valid tax sale sold to the county the lien would no longer seem to be in existence by virtue of the very implication of sec. 80-10-1. And the issuance of a valid auditor's deed would not affect the matter of lien if the county already had the title subject to redemption. It may be wondered, therefore, what office has a statute permitting the county to foreclose a tax lien when the county already has the title to the property free of lien. However a situation may possibly arise where the county may have the right to cut the owner's right of redemption. Such may really be the office of sec. 80-10-1. If the proceedings leading up to the sale are invalid there remains the question of whether as of the first day of January of each year there may not at least be an inchoate lien under section 80-10-3, R. S. U. 1933, which blossoms into a full lien, at least on the occasion of a valid tax levy. Therefore, in such case where the tax may not have been valid we have the question of what lien, or in other terms, what right of resort to the property resided in the county which under section 80-10-4 could be foreclosed. In any event, such right as it may or did have was not transferred to the plaintiff Fisher by the sale to him. The lien of the county cannot be assigned. *Sorensen* v. *Bills,* 70 Utah 509, 261 P. 450.

Did any lien for purchase price to the county exercisable against the owner arise by reason of his having bought the property from the county and by reason of his having subsequently paid taxes? While some of the states give such lien ours does not. We still have the rule of caveat emptor as applicable to the purchase at a tax sale or at a sale from the county after the county has ostensibly obtained the property. While the getting of tax acquired property back into the hands of taxpayers might be sufficient consideration to induce a policy of encouraging the purchase of such property by assuring purchasers that at least they would be secured in the money laid out to the county and subsequent taxes, such is a matter not for judicial but legislative interposition.

The right of a court to grant relief to an owner suing to quiet his title only if he pays to the purchaser of the tax title the outlays of the latter is founded on the principle that "he who seeks equity, must do equity." See *Coughlin* v. *City of Pierre et al.*, 66 S. D. 523, 286 N. W. 877, 878; *Holland* v. *Hotchkiss*, 162 Cal. 366, 123 P. 258, 261, L. R. A. 1915C, p. 492. In the latter case appears this language:

"The confusion thus apparent seems to have arisen from the failure to observe the difference between the cases where the tax purchaser is the actor and those in which relief in equity is sought against him. If the purchaser, claiming title under his tax deed, sues for possession of the land, or if, perceiving that the deed is invalid, he sues the owner to recover the tax paid, as money paid to his use, the general rule is that he cannot prevail, that the rule of caveat emptor will be strictly applied against him, * * *."

And again:

"The doctrine is thus stated in Cooley on Taxation: 'The rule of caveat emptor applies to tax-purchasers. The purchaser at a tax sale will therefore lose what he had paid if his deed is subject to fatal infirmity. This is the rule unless the statute recognizes an equity in him and provides for it. * * * Unless the statute in terms gives it, the purchaser will have no lien on the land for the sum paid on the purchase.' [Vol. 2], Pom. Eq. Jur. p. 1017. The author here speaks concerning rights which the purchaser can enforce by action, not of limitations in equity upon the right of the owner to sue for a cancellation of the sale or deed. As to the latter, he says: 'In vacating a tax or a sale for taxes as a cloud upon title, it is proper to require the complainant to pay any sum that is either a legal or an equitable charge against him, and which will be affected by the decree. And this will be required, although an action against him for such sum would be barred by the statute of limitations. If the tax were wholly illegal in its essentials, of course, no such requirement could be made, for it would not be supported by any equity.' 2 Pom. Eq. Jur. p. 1455."

The case of *Shipp* v. *Sheffield*, 101 Utah 54, 117 P. 2d 996, 997, does not hold that the purchaser has a lien. It merely states: "In so far as any tax liens may exist, *if there are any*," etc. (italics added), thus leaving the matter unde-

cided and in doubt. The Shipp case holds that Fisher, if he concludes to cease paying taxes, cannot, therefore, require payment of that which he has paid, against the Wrights or their grantees. If he concludes to continue to pay taxes he may have to wait indefinitely for the Wrights again to become the actors as they were in the previous suit. His dilemma is perplexing but we are unable to help him. Nor can the fact that the Wrights stipulated that he could foreclose " his lien on said lands, for the taxes in the manner provided by law," help him when he has no lien to foreclose nor any manner provided by law for foreclosing a lien which does not exist. For the above reasons I concur.

McDONOUGH, Justice (concurring).

I concur upon the ground that the foreclosure proceeding provided by Sections 80-10-41 to 80-10-46, R. S. U. 1933, is not available to the purchaser of a defective tax title and upon the additional ground that plaintiff, by his purchase or otherwise, acquired no lien which might be otherwise foreclosed.