## MERCUR COALITION MIN. CO. v. CANNON et al.

No. 6993. Decided September 8, 1947. (184 P. 2d 341.)

See 61 C. J. Taxation, Sec. 2056. Right of jury trial to remove cloud, quiet title, or determine adverse claims, see note 117 A. L. R. 9. See, also, 44 Am. Jur. 32.

*J. H. Morgan,* and *S. D. Huffaker,* both of Salt Lake City, for appellant.

*Cyrus G. Gatrell,* of Salt Lake City, *A. Pharis Johnson,* of Tooele, and *T. Quentin Cannon,* of Salt Lake City, for respondents.

LATIMER, Justice.

This action was brought in the court below to quiet title to forty-one mining claims located in Tooele County, State of Utah. Plaintiff corporation in its complaint alleged in general terms that for a number of years it had been and now is the owner and in possession and entitled to possession of the said mining claims; that defendants claim an interest in the claims adverse to plaintiff's title; and that defendants have no right, title or interest in and to the claims.

Defendant Cannon alone answered. He disclaimed any interest in sixteen of the forty-one claims, denied plaintiff's possession of or title to the remaining twenty-five claims, and admitted he claimed an interest in the property. The other named defendant, Tooele County, did not answer or plead, and took no part in the proceedings other than being represented at the trial.

A trial was had before the court sitting without a jury, upon the issue of plaintiff's title. The trial court found that plaintiff was not the owner and was not and never had been in possession or entitled to the possession of the twenty-five mining claims in dispute, and entered judgment accordingly. Plaintiff appealed and assigned as error that the above finding and decree are contrary to law and not in accordance with the evidence introduced in the case.

The trial court having found the tax deeds of both parties to be invalid, the assignment of error requires this court to determine from the record whether or not there is sufficient competent evidence to establish that plaintiff was in possession of the claims under a claim of ownership.

In an action to quiet title, a plaintiff must succeed by virtue of the strength of his own title rather than on the weakness of the defendant's title. *Babcock* v. ■ *Dangerfield et al.*, 98 Utah 10, 94 P. 2d 862.

For the purpose of this opinion it can be admitted the evidence establishes that C. P. Burnham on the 15th day of October, 1931, and the 17th day of December, 1931, obtained quit-claim deeds of doubtful legality from Tooele County, Utah, purporting to transfer title to the claims set forth in plaintiff's complaint. Burnham did not pay the

taxes on these claims for any subsequent year until December 6, 1935, and then made payment only for the year 1931. Taxes for the years 1932 to 1937, inclusive, were never paid by the plaintiff or its predecessors. Those from 1938 to the commencement of this action in 1945 were paid by the defendant Cannon.

Reviewing the testimony of witnesses as set forth in the transcript we find the following facts are all that were produced to establish plaintiff's possession. There were only two witnesses who testified to any facts favorable to the plaintiff. The first witness, Brigham Krause, testified that he was an officer of plaintiff corporation, and according to him, C. P. Burnham went into possession of the property during the first part of 1932. Burnham worked the claims every year thereafter, but the nature, extent, location of the work is not indicated. In 1940 Burnham conveyed certain of the claims to the Central Mercur Mining Company, certain to the Mercur Gold Blossom Mining Company, and others to plaintiff corporation. In 1941 or 1942, Burnham was killed in an automobile accident. When plaintiff obtained its deed from Burnham, it immediately started to carry on the development of the property, had several men go out at intervals, and that according to this witness, "he did not know that they (the plaintiff company) had ever stopped doing any of the work." That he saw Burnham doing some work on the Sarah B Group. The record, however, is silent as to whether or not the Sarah B Group is a part of or in any way related to the properties involved in this suit, and the date of the work is not fixed. Other work had been done, but he could not say who did it. That he, the witness, took samples off some of the other claims.

The next witness, Joseph H. Marshall, was also an officer of plaintiff company. He testified that Mr. Burnham had shown him the claims and the work done. That this was in 1934 and since that time the only persons he saw working were Burnham and one, Jamison. That he was interested in buying the claims, and Mr. Burnham, Mr. Jamison, and

Mr. Krause showed him the claims and what work was done. That he did not see any work done by anybody but Burnham and Jamison, who were working when he saw them, on the Old Fred Group and on the Red Cloud group. The time when this work was performed was not given, but the witness did say it was "during the years 1934 to the present."

Appellant relies on the rule of law that actual possession under a claim of ownership makes out a prima facie case against a stranger to the title, and unless controverted by one claiming an interest in the property is sufficient to justify a decree quieting title in the plaintiff.

If the evidence was sufficient for the court to make a finding that appellant was in actual possession under a claim of ownership, then it would be necessary for the defendant to establish an interest in himself. However, the court found that plaintiff was not in actual possession and we cannot say this finding is so manifestly erroneous as to demonstrate oversight or mistake which materially affects the substantial rights of appeallant.

The period of possession which plaintiff claimed for itself and predecessors was from 1932 until 1945. The evidence of possession was to the effect that Burnham did some road work, commenced cleaning out the old workings, and did some sampling. This work was done in 1932. For the period from 1932 until plaintiff acquired deeds to the claims in 1940, the only statement in the record that plaintiff or its predecessors might have been on the property is the following:

"Mr. Burnham worked on those claims from 1932 until he died."

The only competent evidence of work being done on any claims after 1932 were the statements by witness Krause that Burnham, at one time or another, worked on the Sarah B Group which, as previously stated, was not identified by any witness as being one of the claims in dispute. As to what year or years this work was done is not shown by the record. And the statement by the witness Marshall

that he had observed that work had been done on the Gold Blossom claims, on the Dead Horse claim, on the Old Fred Group, and on the Red Cloud claim. This latter evidence was limited to the year 1934 or 1935.

As for the plaintiff company and work it performed, we have the single statement by one witness that

"I did not know that they (the company) ever stopped doing any of the work."

This can hardly be considered proof that the plaintiff company worked on the properties to such an extent as to establish possession.

In 1940 Burnham conveyed the Old Fred Group, Gold Blossom Group, Red Cloud, Fairfield, Three Pointers, Golden Era, Golden Wedge, and Mother Gibson to the Mercur Gold Blossom Mining Company. In 1944 this company conveyed the property to plaintiff corporation. At the same time, 1940, Burnham conveyed additional claims, to wit, Keystone 1, 2, 3, 4 and 5; Hyland; Gladys; Primero; Minerva; Juno; Diana; Manhattan; Tribune; Edna May; and Louise 1, 2, and 3; all to the Central Murcur Mining Company. This company in 1944 conveyed the claims to plaintiff corporation. The record is entirely silent as to any work ever having been done by these two companies during the four years they held title, and many of these are claims involved in this action.

The factual situation thus portrayed by the record is that sufficient competent evidence was not introduced by plaintiff corporation when considered in connection with that offered by defendant to convince the trial court that the work done on the properties from 1934 or 1935 until the commencement of this action established possession.

We do not intend to, neither do we, hold that an owner must do work on patented claims to establish an interest in the claims. However, in an action wherein plaintiff relies not on a record title, but upon possession, it is incumbent upon the plaintiff to show sufficient facts to justify the trial court in finding it was in possession.

One question must be disposed of before we set forth the facts presented by defendant to contradict those presented by plaintiff. This is, must the defendant before being permitted to contradict plaintiff's evidence of possession show some interest in the property? Appellant ■ raises this question and cites the case of *Campbell* v. *Union Savings et al.,* 63 Utah 366, 226 P. 190. There is a statement in that case to the effect that defendant must show some interest in the premises before a question can be raised that the court erred in quieting title in plaintiff. The cited case does not assist plaintiff in this present action for two reasons: First, plaintiff must recover on the strength of its own title, and not on the weakness of defendant's; and second, defendant claimed and offered evidence to establish he was the owner of the tax title, had paid the taxes on the property since 1938 and had been in possession of the property. It may be that defendant's evidence did not establish title in himself, but at least it was sufficient to take him from the rule that a total stranger to the action is not in a position to raise an issue of plaintiff's possession. We, therefore, hold that defendant established a reason for contesting appellant's claim, and therefore could refute, if necessary, plaintiff's evidence on possession.

Defendant's evidence tended to establish the following facts: That he acquired title from Tooele County in 1938 by virtue of a tax deed and had paid taxes on the property since that time. That his father was familiar with the property, had been on it every year, had worked part of it, and that from 1931 to the starting of the action, no work had been done on the premises by any one other than that performed by or for defendant. That the property had been leased by defendant to other parties for range purposes and so used. And that while defendant's father was on the property many times during the period 1931 to commencement of this suit, he never saw anyone working the property.

In view of the record we are compelled to affirm the trial court. During the thirteen years plaintiff claims possession, the property in dispute has been held by an individual, and

three corporations. Two of the corporations lost their charter with the state due to failure to pay the annual fee, and there is no evidence that they went into possession of any claims. The evidence of work done, if any, is meagre, inadequate, and disputed. Taxes for only one of the thirteen years were paid by plaintiff or its predecessors so that intention to hold the property is not indicated. From a colloquy between counsel and the court it appears that there were ten separate groups of claims, yet their location with respect to each other, whether or not they are contiguous, whether or not they are located so as to be operated as one, and whether or not the working on one claim would be evidence of intent to possess all, cannot be answered from the record. A fair inference from all the testimony is that plaintiff's possession was more contemplated than actual. The trial court was entitled to resolve any dispute in the evidence in favor of the defendant, and having done so, we cannot say that on the record as certified to this court the lower tribunal was in error in finding that plaintiff failed to establish possession.

The judgment is affirmed with costs to respondent.

McDONOUGH, C. J., and PRATT and WADE, JJ., concur.

WOLFE, Justice (concurring).

I concur. In this quiet title action the plaintiff sought to prove itself entitled to a decree quieting its title to 41 patented mining claims by:

1. Showing it derived title from Tooele County by quit-claim tax deeds, or

2. Showing actual possession under claim of ownership, thus making a prima facie case sufficient against a stranger to the title to support a judgment quieting title in the plaintiff.

Defendant disclaimed as to 16 of the claims so only 25 are here in contest.

As to showing title by the quit-claim tax deeds from Tooele County: The quit-claim deeds themselves were the

only evidence of title from Tooele County. A party who sets up title by tax deed must show that all requirements of law have been complied with to make the tax deed valid. *Asper* v. *Moon,* 24 Utah 241, 67 P. 409; *Bolognese* v. *Anderson,* 87 Utah 450, 44 P. 2d 706, rehearing 87 Utah 455, 49 P. 2d 1034. Section 80-10-35, U. C. A. 1943, simplified the proving of compliance with the taxing requirements by providing that a certified copy of the record of any tax sale is prima facie evidence of regularity of all proceedings connected with the assessment, valuation, and the other steps of the proceedings and providing that such a certified copy of the record of the tax sale casts the burden of showing any irregularity in any of the proceedings on him who asserts that irregularity. However, in this case the plaintiff made no attempt under Section 80-10-35 or otherwise to prove that its tax deeds from Tooele County were supported by the regular compliance with all the tax procedure requirements. The plaintiff therefore did not prove any title in itself by virtue of the tax deeds from the county.

Did the plaintiff show possession so as to give rise to make a prima facie proof of title? The plaintiff's evidence of possession is as outlined in Mr. Justice LATIMER'S opinion. The defendant's evidence contradicts the evidence introduced by the plaintiff. Defendant's father testified that he was acquainted with the claims here involved and that he visited the claims each week from 1931 "until the war started" "about 1941." He testified that during that period no work had been done on the 25 claims here involved except a little done by him and under his direction. He also controverts the plaintiff's other evidence tending to show its possession such as the building of roads and the assertion that employees of the plaintiff camped on the land. He testified that he leased the property for sheep grazing purposes in 1938 and that the lessee since that time and until the present has grazed sheep over the land every spring and fall. He testified that he has paid the taxes on the property each year since 1938.

It is apparent that the evidence as to plaintiff's possession is in conflict. The question of its possession was a question of fact to be determined by the trier of the facts, in this case by the trial judge. Apparently the trial judge determined that plaintiff was not in possession. (There is no express finding to that effect but the judgment expressly says,

"And it is further ordered, adjudged and decreed that the plaintiff is not and never has been the owner, in possession or entitled to the possession"

of the 25 claims here involved). There is competent evidence to support that determination. It was therefore not error for the trial court to so decide.

Plaintiff did not show possession which would be prima facie proof of title nor title by tax deeds nor in any other way. It was therefore not entitled to a judgment quieting its title to the 25 claims here in contest. The judgment of the lower court should therefore be affirmed.

In this case the court adjudged the plaintiff was

"not and never had been the owner, in possession or entitled to the possession of any of the other claims [those at issue in regard to which defendant Cannon had not disclaimed] and as to such other claims its [plaintiff's] action is hereby dismissed with prejudice."

No judgment as to the nature of defendant Cannon's rights in the contested claims was rendered for the reason apparently that Cannon in his answer simply denied that plaintiff was the owner of or in possession or entitled to the possession of any certain of the claims and asked for no affirmative relief. But plaintiff alleged in the fifth paragraph of its second amended complaint

"that said defendants or either of them, has no right, title or interest in and to the said mining claims or any of them."

This allegation defendant Cannon denied. The prayer of plaintiff's complaint asked that defendants be required to set forth herein any interest they or either of them claim in and to said mining claims or either of them.

In the second *Bolognese* v. *Anderson* case, 97 Utah 136, 90 P. 2d 275, 276, we said:

"And as appellants did not in their answer ask for any new or affirmative relief by way of quieting their own title, they are not entitled to a decree. See *Fisher* v. *Davis,* 77 Utah 81, 291 P. 493."

I suppose it was on the strength of this sentence in the *Bolognese* case just cited and certain California holdings that the court below did not determine whether Cannon was the owner or entitled to the possession of the claims in contest. I think this leaves the parties in an unfortunate position. The plaintiff is notified that he has no right, title or interest in the contested claims but the defendant, who asserts indirectly because of his denial of plaintiff's allegation of defendant's non-title and interest that he, the defendant, has an interest, does not have that question determined as to him.

From our experience in regard to similar pleadings in several of these quiet title cases, defendants have seemingly intentionally refrained from asking for affirmative relief in order that they may defeat the plaintiff's claim of title but not have their own tried out. This is an unfortunate state of the law. It permits the defendant to assume a dog-in-the-manger attitude and only settles the question as to whether the plaintiff has or has not title. I think as between the plaintiff and defendant in the suit the pleadings should be construed as putting in issue the rights of each as against the other, especially as in the instant case the plaintiff prayed that defendants be required to set out their title or interest.

It was not meant that litigants play chess with the law. Where the issue is as to mining claims and public domain, the consequences of a one-sided determination as to ownership or right of possession may lead even to gun play. A plaintiff is adjudged affirmatively to have no interest; but it is not found either that the defendant has an interest. The plaintiff may thereupon proceed to enter and attempt to establish possession with likely resistance of the defendant.

The half determined case sets the stage for a quarrel. But in this case the plaintiff has not appealed from the court's failure to find as to defendants' rights in the claims; hence, it is not before us. When it does come to us, I shall feel myself free to determine whether in an action to quiet title under our Section 104-57-1, U. C. A. 1943, reading:

"An action may be brought by any person against another who claims an estate or interest in real property adverse to him *for the purpose of determining such adverse claim.*" (Italics added),

the defendant should not be required to disclaim or set out the nature of his interest, if any. I also reserve my opinion on whether the trial court should not find and decree the nature and extent of that interest, and that, whether or not the defendant pleads for affirmative relief.