TORONTO et ux v. SHEFFIELD et al.

No. 7233.  Decided October 2, 1950.  (222 P. 2d. 594)

See 16 C. J. S., Constitutional Law, Sec. 522. Constitutionality of statute barring defense against an action by holder of tax title to recover property from owner has retained possession of land. Note 126 A. L. R. 649. See, also, 51 Am. Jur. 954.

*E. R. Christensen, Homer Holmgren,* and *A. P. Kesler,* all of Salt Lake City, for appellants.

*James M. Carlson,* Salt Lake City, for respondents.
WADE, Justice.

The question presented here is: Does Section 104—2—5.10, Chapter 19, Laws of Utah 1943, page 22, and the amendment thereto by Chapter 8, Laws of Utah 1947, page 19, bar defendants' defense to plaintiffs' action to quiet their tax title to the real property involved in this action? Many problems of construction are hereinafter suggested

to bring them to the attention of the bench, bar and legislature in case there is further legislation on this subject, but they are not decided because their determination is not necessary for the disposal of this case.

Plaintiffs sue to quiet title to a tract of land in Salt Lake City, alleging ownership and possession in themselves. The defendants Sheffield answered denying plaintiffs' ownership, admitted that they claim an interest in the property, but deny that their interest is inferior to plaintiffs' claim. The defendant, Salt Lake City, alleged that it has a lien on the property for unpaid special assessments which it described in detail. The other defendants defaulted or disclaimed any interest. None of the defendants asked for any affirmative relief, but merely prayed that plaintiffs' complaint be dismissed. In reply plaintiffs alleged that Salt Lake City's lien was extinguished by the Auditor's Tax Deed hereinafter described, and that its claim was barred by Sections 104—2—5, 104—2—5.10, and 104—2—6, Laws of Utah 1943, Chapters 18, 19, and 20 at pages 21 and 22 and other sections of the statute of limitations.

At the trial plaintiff produced evidence to the effect that this was unimproved vacant city property for which plaintiffs paid $400.00 cash to Salt Lake County and introduced a Certificate of Tax Sale to Salt Lake County dated December 21, 1923, for the delinquent taxes for that year, an Auditor's Tax Deed dated May 24, 1928, to the county and a Quitclaim Deed from Salt Lake County conveying such property to plaintiffs, dated July 5, 1946, and rested. The only evidence on behalf of the defendants was an oral stipulation in court by the parties that neither of the Auditor's affidavits, required by sections 5982 and 6006, C. L. U. 1917, now Sections 80—7—9 and 80—8—7, U. C. A. 1943, were attached to the assessment roll for 1923. Defendants' claim that under the evidence plaintiffs' title was invalid and the action must be dismissed. See *Telonis* v. *Staley,*

104 Utah 537, 144 P. 2d 513; *Equitable Life and Cas. Ins. Co.* v. *Schoewe*, 105 Utah 569, 144 P. 2d 526; *Tree* v. *White*, 110 Utah 233, 171 P. 2d 398; *Petterson* v. *Ogden City*, 111 Utah 125, 176 P. 2d 599; *Anson* v. *Ellison*, 104 Utah 576, 140 P. 2d 653.

The court found that the plaintiffs are the owners and in possession of the property, that the defendants and each of them are barred from attacking the Certificate of Tax Sale and the Auditor's Tax Deed to this property by Sections 104—2—5, 104—2—5.10, and 104—2—6, Laws of Utah 1943, supra and the amendment to 104—2—5.10 in Laws of Utah 1947 and quieted plaintiffs' title to the property. From this judgment defendants Sheffield and Salt Lake City appeal.

Under the above decisions plaintiffs' title is defective and unless Section 104—2—5.10, supra, bars the defendants from interposing that defense to plaintiffs' action, the judgment must be reversed. Section 104—2—5.10, after being in effect for the full four year period, was amended by Chapter 8, Laws of Utah, 1947 at page 19. I have set out below in composite form the original act of 1943 and the 1947 amendment. The words in ordinary print are in both the original and the amendment. Those with lines through them were in the original act but not in the amendment, and the italicized words were placed in the statute by the amendment. So to get the act as originally passed, read only the words which are in ordinary print and the words with a line running through them; and to get the amendment, read only the words in ordinary print and the italicized ones:

"No action for the recovery of real property struck off and sold to the County ~~as provided by~~ *under the provisions of* Section 80—10—68(6), Utah Code Annotated 1943, *or conveyed to the County prior to September* 1, 1939, *by auditor's deed under the provisions of Section* 80—10—66, *Revised Statutes of Utah* 1933, or for the possession thereof, shall be maintained, and no ~~defense or counterclaim to any action involving the recovery of property,~~ ~~or the defense of title to property, sold at such sale, or public or private~~ ~~sale,~~ *for the recovery of such property* or for the possession thereof shall be

set up or maintained *interposed* unless the same be brought or set up *interposed* within four years from the date on which the sale was held *of such sale, or within four years from the date of the issuance of such auditor's deed.* Provided, however, that an action may be maintained or defense set up within four years from the effective date of this act with respect to real property sold prior to said effective date."

Plaintiffs must rely on the act as it was originally enacted without the aid of the amendment because any changes made by the amendment which were not contained in the original has not been in effect for the full four years. The 1947 amendment expressly extends the bar to actions for the recovery of real property "conveyed to the County prior to September 1, 1939, by auditor's deed under the provisions of Section 80—10—66, Revised Statutes of Utah 1933" which would probably cover this case, for the auditor's tax deed to Salt Lake County dated May 24, 1928, was made pursuant to Section 6030, C. L. U. 1917, which with slight amendments, was the same as Section 80—10—66, R. S. U. 1933. The amendment deletes from the act the provision "that an action may be maintained or a defense set up within four years from the effective date of this act with respect to real property sold prior to said effective date." The full four years had expired after this deed was issued before the 1943 enactment or the 1947 amendment thereto. So, if this case is covered by the amendment but not by the original 1943 enactment, then there was an attempt to bar this action upon the effective date of the amendment without allowing any time thereafter within which to bring an action. The Legislature may bar a claim within a reasonable time within the effective date of a statute enacted for that purpose, but may not constitutionally bar such claim without allowing some time to elapse during which claimant may bring an action thereon after the effective date of the statute. See *Sohn* v. *Waterson,* 17 Wall. 596, 84 U. S. 596, 21 L. Ed. 737; *Thoeni* v. *City of Dubuque,* 115 Iowa 482, 88 N. W. 967; *Western Holding Company* v. *Northwestern Land & Loan Co.,* 113 Mont. 24, 120 P. 2d 557; *Wallace* v. *McEch-*

*ron,* 176 N. Y. 424, 68 N. E. 663. So, either this amendment must be construed to commence the running of the four years period of limitations at the time of the enactment or be held to be unconstitutional.

By its terms, this statute, contrary to most such statutes, bars actions, counterclaims, or defenses brought or interposed either to sustain or overturn a tax title. So construed, the purpose of the statute would not be that of a limitation to actions which is to settle stale claims but would be to bar the courts from adjudicating the title to any such property. So construed such a statute would probably be unconstitutional, for it is inconceivable that a legislature has the power to prevent the litigation of claims in the courts. Wisconsin has construed a statute somewhat similar to this one in this respect as barring an action for the recovery of property sold at a tax sale by either the purchaser at such sale or by the original tax debtor owner, whichever one was not in possession; and in cases of vacant and unoccupied property, the purchaser of a tax title which was good on its face was held to have constructive possession of such property.[1] Where the tax title was void, on its face, an action by the purchaser of such tax title would be barred by the statute except where he was in actual possession of the property. *Egerton* v. *Bird,* 6, Wis. 527, 70 Am. Dec. 473; *Knox* v. *Cleveland,* 13 Wis. 245; *Sprecker* v. *Wakeley,* 11 Wis. 432; *Hill* v. *Kricke,* 11 Wis. 442; *Falkner* v. *Dorman,* 7 Wis. 388; *McMillan* v. *Wehle,* 55 Wis. 685, 13 N. W. 694.

---

[1] Section 104—2—7, U. C. A. 1943, providing that "the person establishing a legal title to the property shall be presumed to have been possessed thereof within the time required by law; and the occupation of the property by any other person shall be deemed to have been under and in subordination to the legal title, unless it appears that the property has been held and possessed adversely to such legal title for seven years before the commencement of the action," might change the presumption of possession in our state.

This 1943 original statute is also unusual in that it expressly bars defenses as well as actions and counterclaims. Usually it is held that a statute which bars a defense against an action by the holder of the tax title to recover property from the owner who has retained actual possession thereof is unconstitutional. See *Buty* v. *Goldfinch,* 74 Wash. 532, 133 P. 1057, 46 L. R. A., N. S., 1065, also note at page 1066, Ann. Cas. 1915A, 604 and note at 608.

To understand our problem we must keep in mind the procedure prescribed by statutes for tax sales. Under section 80—10—32, U. C. A. 1943, on January 10th, of each year all real estate subject to a lien for delinquent taxes are deemed sold to the county to pay such tax at preliminary tax sale. With a few changes in minor details this is the same as section 80—10—32, R. S. U. 1933, and a similar procedure is provided for by sections 6018 to 6023, C. L. U. 1917, pursuant to which this sale was conducted and the tax sale certificate issued in 1923. Thereafter, any real estate sold to the county under a preliminary sale for delinquent taxes may, under sections 80—10—59, U. C. A. 1943 and R. S. U. 1933 and Section 6024, C. L. U. 1917, be redeemed by any person having an interest therein while such property is held by the county under such preliminary sale prior to April 1st next following the lapse of four years from the date of the preliminary sale. There are three different kinds of sales by which the county may transfer the title to property sold to it under the preliminary sale for taxes which is not redeemed within the time specified therefor other than by a foreclosure suit; (1) by private sale; (2) by public sale; and (3) by striking it off to the county under subdivision (6), Section 80—10—68, U. C. A. 1943.

(1) Under section 80—10—36, U. C. A. 1943, and R. S. U. 1933 and Section 6023, C. L. U. 1917, as amended by Laws of Utah for 1919, page 339, at any time after the

preliminary sale and before the expiration of the redemption period the county treasurer is required to sell and assign the interest of the county in any real estate which is subject to such preliminary delinquent tax sale to any person holding a recorded mortgage or lien against such property upon his payment of the amount of the delinquent taxes, interest, penalties and costs thereon. Thereupon, such purchaser is entitled to receive an assignment of the county's interest in such property from the county auditor. In case the property is not redeemed within the redemption period, such assignee may thereafter present such assignment to the county auditor who is required to make out a deed conveying such property to him from the county. Here there is no deed conveying the property to the county except the record of the preliminary sale but the deed conveys the property directly from the county to the recorded lien holder assignee.

(2) Under section 80—10—68 (2), (3), (4) and (5), U. C. A. 1943, 80—10—68, R. S. U. 1933 and Section 6056, C. L. U. 1917, the county is required to advertise for sale and sell at public sale all real property previously sold to the county at preliminary tax sale and not redeemed or sold at private sale under section 80—10—36, for which an acceptable bid is made, and upon which the period of redemption has expired. Here again since the 1939 amendment the deed runs directly from the county to the purchaser but prior to that amendment under section 80—10—66, R. S. U. 1933, the county auditor deeded all the property which was subject to the May sale to the county after the redemption period expired and prior to the May sale, and thereafter the Board of County Commissioners might sell the same at any time at public or private sale.

(3) Then, under section 80—10—68 (6), U. C. A. 1943, after all the real property which has been previously sold to the county at preliminary tax sale and not redeemed or sold at private sale under Section 80—10—36 and upon

which the redemption period has expired has been offered for sale at the May sale, all of such property for which no acceptable bid is received, is then struck off and sold to the county and a record made thereof. This property may thereafter be sold by the Board of Commissioners at any time at public or private sale. This sale is in many respects similar to the sale to the county provided for under section 80—10—66, R. S. U. 1933, except that that sale is made prior to the May sale upon the expiration of the redemption period, and not at any specified occasion but a separate auditor's deed is made to the county for each parcel of land and it covers all the property which under section 80—10— 68 (2), (3), (4) and (5) is offered for sale and sold at the May sale to a bidder as well as that which is struck off and sold to the county at that sale.

Section 104—2—5.10 as enacted in 1943, bars only an action "for the recovery of real property struck off and sold to the county as provided by section 80—10—68 (6), Utah Code Annotated 1943". It does not bar an action for the recovery of real property which is sold to a recorded mortgage or lien holder at private sale under section 80— 10—36 as described in paragraph (1) above nor for the recovery of real property sold to a bidder under section 80—10—68 (2), (3), (4) and (5) at the May sale as described in paragraph (2) above. It covers only the property struck off and sold to the county under the last of these three kinds of sales.

But, in dealing with defenses it bars a defense or counterclaim

"to any action involving the recovery of property, or the defense of title to property, sold at such sale, or public or private sale."

This language enlarges the bar so as to include defenses and counterclaims to actions for the recovery of real property sold at public and private sales described in paragraphs (1) and (2) above as well as for the recovery of

property struck off and sold to the county as described in paragraph (3) above. And it not only bars a defense or counterclaim to an action involving the recovery of real property which has been so sold but also bars the defense of title to such property.

By its terms the language of the 1943 enactment of section 104—2—5.10, bars only an "action for the recovery of real property struck off and sold to the county, as provided by section 80—10—68 (6), Utah Code Annotated 1943". As pointed out above, prior to 1939 this property was, with other property, conveyed to the county by auditor's deed under section 80—10—66, R. S. U. 1933, which was the procedure followed in this case. Thereafter, the May sale provided for under Section 80—10—68, R. S. U. 1933, was held and the property for which a suitable bid was received was sold to such bidder under general provisions of section 80—10—68, R. S. U. 1933, but there was no subdivision (6) of that section authorizing the conveyance of any property to the county. This procedure was quite a departure from that provided for under section 80—10—68 (6), U. C. A. 1943. It seems unusual that the legislature intentionally enacted a statute barring only actions involving tax sales made since the 1939 amendment under section 80—10 —68 (6), U. C. A. 1943, and not cover tax sales made under section 80—10—66, R. S. U. 1933, where the claim would have to be much more stale. But the history of the bill which was later, after amendments, enacted into this statute indicates that the legislature deliberately chose that narrow limitation, for the bill as originally introduced was much broader in its bar of actions than it was when enacted.

Below is a composite form of the bill as introduced and as finally enacted. As in the composite form of the original and amended acts the words in ordinary print and those with the line running through them are the bill as originally

introduced and the words in ordinary print and those which are italicized constitute the act as it was enacted.

"No action for the recovery of real property sold at tax sale or public or private sale *struck off and sold to the county,* as provided by section 80—10—68 (6) Utah Code Annotated 1943, or for the possession thereof shall be maintained *and no defense or counter-claim to any action involving the recovery of property, or the defense of title to property, sold at such tax sale, or public or private sale, or for possession thereof, shall be set up or maintained,* unless the same be brought *or set up* within two *four* years from date on which the sale was held. Provided, however, that an action may be maintained if brought within two *or defense set up within four* years from the effective date of this act with respect to real property sold prior to said effective date."

From the foregoing it is evident that the bill as introduced is much broader in its bar to actions than it was as enacted, and that parts of the original coverage was switched to bar only defenses and counterclaims. Such changes would require considerable study and indicate that they were made deliberately and we must conclude that the legislature intended to exclude from the limitations of this section, all actions, defenses and counterclaims for the recovery of real property except those expressly specified in the statute. The statute specifies only actions "for the recovery of real property struck off and sold to the county, as provided by section 80—10—68 (6), Utah Code Annotated 1943" and defenses and counterclaims "to any action involving the recovery of property, or the defense of title to property, sold at such tax sale, or public or private sale, or for possession thereof." This provisions does not bar a defense to an action such as this for the recovery of real property transferred to the county by auditor's deed under section 80—10—66, R. S. U. 1933, for no reference is made to such a transaction.

Our State Constitution, Article 1, section 24 provides that "all laws of a general nature shall have some uniform operation." And Section 1 of the Fourteenth Amendment to the federal constitution forbids any state to "deny to any person within its jurisdiction the equal protection of

the laws." Under these provisions in *State* v. *Mason*, 94 Utah 501, at page 507, and 78 P. 2d 920, at page 923 and 117 A. L. R. 330 through Mr. Justice WOLFE, we said:

"Of course, every legislative act is in one sense discriminatory. The Legislature cannot [in one act[ legislate as to all persons or all subject matters. It is inclusive as to some class or group and as to some human relationships, transactions, or functions and exclusive as to the remainder. For that reason, to be unconstitutional the discrimination must be unreasonable or arbitary. A classification is never unreasonable or arbitrary in its inclusion or exclusion features so long as there is some basis for the differentiation between classes or subject matters included as compared to those excluded from its operation, provided the differentiation bears a reasonable relation to the purposes to be accomplished by the act."

To the same effect, see *Gronlund* v. *Salt Lake City*, 113 Utah 284, 194 P. 2d 464; *Broadbent* v. *Gibson*, 105 Utah 53, 140 P. 2d 939; *State* v. *Walker*, 100 Utah 523, 116 P. 2d 766; *State* v. *Sopher*, 25 Utah 318, 71 P. 482, 60 L. R. A. 468, 95 Am. St. Rep. 845.

Here, there is no basis whatever for the distinction made. The conditions surrounding the sale to the county under section 80—10—68 (6), U. C. A. 1943, since the 1939 amendment and the objects and purposes thereof are exactly the same as those of section 80—10—66, R. S. U. 1933, prior to that amendment. The only factual difference whatever is a slight change in the procedure and the fact that the sale made under the former statute must have been made before the one under the present statute and therefore deals with a claim which is more stale. Certainly that fact would not justify the distinction of barring the newer claims while not barring the older ones. We therefore conclude that this differentiation between these two classes of sales bears no reasonable relation to the purposes to be accomplished by this act and therefore hold that the discrimination against persons who as plaintiffs here purchased tax titles transferred to the county under the statute in effect prior to the 1939 amendment is arbitrary and unreasonable and therefore is unconstitutional.

Again we are confronted with the hard situation resulting from our decisions in *Bolognese* v. *Anderson,* 97 Utah 136, 90 P. 2d 275; *Fisher* v. *Wright,* 101 Utah 469; 123 P. 2d 703; *Anson* v. *Ellison,* 104 Utah 576, 140 P. 2d 653; referred to by Mr. Justice WOLFE in *Mercur Coalition Min. Co.* v. *Cannon.* 112 Utah 13, 184 P. 2d 341 and *Crystal Lime & Cement Co.* v. *Robbins,* 116 Utah 314, 209 P. 2d 739. Plaintiffs at the soliciation of their county government pursuant to a state statute paid the county the delinquent taxes, thereby discharging the tax lien therefor against this property. But through no fault of their own, they failed to obtain a valid title. As the result of this action plaintiffs' title will be · adjudicated to be invalid thereby in substance and effect quieting the delinquent tax debtor owner's title and relieving it from the cloud of plaintiffs' claim. But because defendants merely denied plaintiffs' ownership and asked for no affirmative relief, plaintiffs are unable to recover from such defendants, who should have paid these taxes, the money they are out. Had such defendants commenced this action or demanded affirmative relief plaintiffs could have recovered, although the effect of this suit on the title to the property would have been the same in both cases, and it is the effect which the delinquent tax debtor intended desired and by denying the validity of plaintiffs' title in effect asked for.

I think, speaking only for myself and not for the court, that the cases which create such a situation should be overruled to the extent of allowing the tax title purchaser to recover from the delinquent tax debtor whenever it appears that he has put in issue the validity of such tax title and the court holds that it is invalid. This, regardless of whether he asks for affirmative relief or not, though I recognize that such holding might be contrary to the weight of authority. For it is more important that we have rules that bring practical, consistent and just

results than that we sustain ancient technical concepts though they are, in a way, logical.

The legislation could very easily correct this situation by creating a lien in the tax title purchaser against the property which he thereby released from the delinquent tax lien in all cases where he failed to obtain a valid title to such property.

The judgment is reversed and remanded to the trial court for further proceedings in accordance with this opinion. Appellants may recover their costs.

McDONOUGH, J., concurs.

PRATT, C. J., concurs in the result.

WOLFE, Justice (concurring).

I believe, as does Mr. Justice LATIMER, that section 104—2—5.10, Chapter 19, Laws of Utah, 1943, as amended by Chapter 8, Laws of Utah 1947, is inoperative because the act is indefinite, uncertain, inconsistent, muddled and confused and does not lend itself to intelligible or workable interpretation within the bounds of construction. We cannot go beyond construction of an act of the Legislature. We cannot be the architects of a new act.

I am also inclined to the view of Mr. Justice WADE that the act as amended is unconstitutional in that there is no basis as far as barring actions is concerned for differentiating on the one hand between tax sales made under the conditions of Section 80—10—68 (6), U. C. A. 1943, and on the other hand those made under Section 80—10—68, R. S. U. 1933 and under Section 80—10—36, U. C. A. 1943, and under predecessor statutes to these sections. It would seem that if actions involving real property struck off to the county under Section 80—10—68 (6) are to be barred after four years, actions for the recovery or possession of real estate where the procedure

involved a conveyance to the county prior to September 1, 1939, by auditor's deed under the provisions of Section 80—10—66 R. S. U. 1933, should, for what would appear to be exactly the same reasons, be barred.

Nor does there occur to me any purpose to be accomplished by the act in differentiating on the one hand between actions brought that involve only instances when property was struck off and sold to the county under Section 80—10—68 (6), U. C. A. 1943 and on the other hand, defenses or counterclaims in actions where the procedure involved a sale to a person holding a mortgage on lien under Section 80—10—36, U. C. A. 1943 and its predecessor sections in the 1917 compilation and 1933 revision or defenses or counterclaims in actions where the procedure involved a sale made under the provisions of Section 80—10—68(2), (3), (4), (5), U. C. A. 1943 and its predecessor statutes in the 1917 compilation and 1933 revision.

There may be some purpose in this differentiation which I do not see just as Mr. Justice WADE is also unable to see. It appears to me that property sold to a purchaser of a tax title under the provisions of either Section 80—10—36, U. C. A. 1943 or its predecessor provisions or under Section 80—10—68 (2), (3), (4), (5), U. C. A. 1943 and its predecessor provisions, whether sold to the purchaser direct from the county or first conveyed by the County Auditor to the county and then from the county to the purchaser or whether sold under the provisions of Section 80—10—68 (6), U. C. A. 1943, are all in the same boat as far as the bringers of actions for the recovery or possession of property and as far as defenses and counterclaims set up by defending litigants are concerned. Counterclaimants may be in the same legal position as bringers of actions except that they wait to be sued to set up their actions. If, therefore, certain actions for recovery or possession are not barred in four years because they were acquired under certain types of tax pro-

cedure, why should counterclaims which may involve exactly the same situations be barred because the property was acquired under the provisions of slightly different statutes?

But at all events the Section 104—2—5.10, Chapter 19, Laws of Utah 1943, as amended by Chapter 8, Laws of Utah 1947, is as stated by Mr. Justice LATIMER so confusing and so elusive of any intelligent and workable interpretation as to be inoperative. In consequence, I concur with what is said by Mr. Justice WADE and Mr. Justice LATIMER and on the basis of the opinions of both, that the plaintiff cannot prevail in this case.

The result being in this case what it is, defendant Sheffield is let in to his defenses and the plaintiffs will fail in their action to quiet title in themselves. Thus we are confronted in a suit to quiet title brought by the purchaser of a tax title with the situation where said purchaser has paid out money which has benefited the tax debtor owner.

Where the tax debtor owner brings the action to quiet title, there will usually be no difficulty. Where he brings the action, he asks for a judgment quieting title, and thus judgment may be granted on condition of his repaying the money paid out by the purchasers of the tax title for the benefit of the tax debtor owner. But even here, the owner may decide that he would rather forego his decree than pay the money and in such a case the purchaser of the tax title would be helpless when it came to obtaining recoupment.

But where the tax debtor owner is called on to defend an action to quiet title brought by the purchaser of the tax title, the situation is still worse. The owner may assume a purely defensive attitude, refuse to ask for affirmative relief and plead only that the plaintiff has no right to have the title quieted in him because he does not have title, and

in the proof demolish plaintiff's title by uncovering substantial infirmities in the tax procedure which would reveal that the county never obtained title from the tax debtor owner and consequently could not convey title to the tax title purchaser.

Perhaps in our early cases we have protected the tax debtor owner to a degree not warranted by public policy, although this court may have been influenced by the statutes which seemingly required certain rigid tax procedure to effectuate a good tax title in the county.

But there was also a public policy expressed by those sections of the tax laws which dealt with the sale by the county of property which by tax default had gotten off the tax rolls and into the hands of the county, to the effect that parties be encouraged to purchase such property from the county in order that it might again reside in private hands and thus yield public revenue for the maintenance of government.

In a sense, these two public policies are at war. The application of the rule of *strictissimi juris* to tax procedure does protect the tax debtor owner; in fact, it not only protects him but allows him to default in his taxes year after year, therefore refraining from making his required contribution to state and local government knowing that the probabilities lie heavily in favor of some shrewd sharpshooter attorney versed on tax law being able to uncover the invalidity of a title acquired by a purchaser from the county. It is the rare case, indeed, where a search of the tax procedure will not disclose somewhere along the line one or more infirmities of commission or omission in the tax procedure. And almost every type of such infirmity has been held to be an infirmity which transcends the level of an informality in an act relating to assessment or collection of taxes, see Sec. 80—11—7, U. C. A. 1943, or if lying in a field of tax procedure

outside of assessment or collections, of such a nature as to invalidate the country's title. The whole subject matter is not unconnected with our cycle of periodic depressions at which time both the legislature and the courts, influenced by the wholesale manner in which poverty stricken property owners unable to meet taxes were suffering from the consequences of delinquencies, by legislation and decision leaned heavily toward rescue of the distressed property owners. Nor was it alone because of political considerations. Underneath was the realization that in America the welfare of the country is directly tied to a base of large groups of home-owning citizens as distinquished from a landless proletariat and its usual concomitant, swollen land holdings of the comparative few.

But even the fact that it was made difficult for a defaulting taxpayer to lose title to his property even over the years, unless through adverse possession (because there was no statute of limitations such as was by the legislature attempted and considered in this case), might not have discouraged tax title purchasers so long as there was an opportunity to gain good title by an action to quiet title or in lieu thereof obtain repayment of all the money which such purchasers had invested in the property, at least to the extent to which the tax debtor owner had been benefited, together with a generous rate of interest. And in the remote past, I think this has been possible. But when the statutes were amended to require a sale only to the county or to lien holders in order to permit them to protect their liens—thus preventing the general public from purchasing at tax delinquent sales (not, however, tax titles from the county)—the only way a non lien holder could invest in tax delinquent property was to purchase tax titles from the county. And the only incentive for doing this was that eventually he might acquire good title against the tax debtor owner by succeeding in a suit to quiet title in himself or, if he failed in that, recoup himself

for money paid out with interest. But this latter might depend on whether tax debtor owner would be compelled to put himself in such position in the quiet title action whereby he could by the court be made to pay the money paid to the county by the tax title purchaser at least to the extent he (the tax debtor owner) benefited by it. As before stated, where the tax debtor owner brought the suit to quiet title, the court under *Burton* v. *Hoover*, 93 Utah 498, 74 P. 2d 652, would have had no difficulty in requiring him to pay the tax title purchaser (if the latter were made a defendant, which he usually was) the money paid by said latter to the county, at least to the extent which the tax debtor owner benefited by the payment because such tax debtor owner's taxes had been paid and his property thus freed from lien for them.

The difficulty arose when the tax title purchaser was the plaintiff in the suit to quiet title. Here, as before noted, the tax debtor owner (defendant) could deny the tax title purchaser's (plaintiff's) allegation that he, the tax title purchaser, had title, admit the allegation of the tax title purchaser that he, the tax debtor owner, claimed an interest, deny that the said interest was inferior to that of the title purchaser's interest, assert that it was on the other hand superior to his (the tax title purchaser's) interest and as to pleadings stop there.

As to proof, all he had to do was to show up the infirmity in the title of the tax title purchaser by revealing the infirmity in the tax procedure and stop there as was done in this case. The court, on the theory that an action to quiet title was more than an action to try the strength of the plaintiff's title, but was an action to adjudicate the title of all parties to the action (which, of course, under the statute it is) could compel the tax debtor owner (defendant in the case we are considering) to plead the nature and extent of his, the defendant's, title and adjudicate the respective rights and claims of both parties. The court

might go so far as to strike the pleading of the defendant if he was ordered to amend to plead the nature and extent of his claim ·or title and if he refused to do so the court could give judgment for the plaintiff (the tax title purchaser in the case we are considering) and quiet title in the plaintiff against the defendant. In this way, the plaintiff would get a decree that he had title and was owner as against the defendant, and the defendant would lose his ownership. But the chances are that the plaintiff would not be so fortunate as to have as a litigant a defendant who would oblige by not amending as required, and if he did amend, would stop there after barely complying with the court's order to amend. He would not go further and ask that title be quieted in him. Then he would come into court, show the infirmity in the plaintiff's title, demolish it and walk away.

Of course, on the theory that a mere stranger cannot attack the title of the plaintiff, but must at least show some interest in himself, the defendant might be compelled to show the strength of his title and reveal that he was the tax debtor owner. In such a case, if the court found that he was, it would quiet the title in turn on condition that he pay to the plaintiff (the tax title purchaser) the money the latter was out to the extent that the defendant benefited. But if the defendant did not pay, the finding would repose in the records of the clerk's office but there would be no decree. The plaintiff could not obtain a decree because it was shown that the defendant was really the title holder; neither could he obtain recoupment for the money he paid for the invalid tax title or such part as the defendant should pay because the taxes in respect to which he had defaulted had by the tax title purchaser in effect been paid, at least the lien for taxes discharged.

Mr. Justice WADE has these difficulties in mind. He suggests that the Legislature could provide that the tax title purchaser be given a lien on the tax debtor owner's

property for the taxes paid for his benefit. Such a lien, coupled with a proper statute of limitation, would really accomplish what the Legislature appeared to want to do by its peculiarly and confusedly worded acts considered in this case. Without such statute of limitations, long-ago buyers of tax titles and/or holders of ancient tax certificates might come to life with a large claim for accumulated interest at the statutory generous rate provided by the tax laws for buyers of tax certificates or at the legal rate, but in any event of such size by the automatic accumulation of time as to saddle the tax debtor owner's property, now perhaps passed from him into more innocent hands with a lien, for a large amount.

I think we must throw this whole problem in the lap of the legislature, together with our suggestions and admonitions, and ask them to try again but with an eye on the total problem. Perhaps the whole tax sale procedure should be revamped in toto. There have been amendments made to parts of the procedure in the past, but without consideration as to how they affect the whole or other parts thereof.

But before I close, I should call attention that this court may have to acknowledge some responsibility for the muddled situations and in this stricture I include myself.

Taxpayers are not prejudiced by many of the omissions or misfeasances of tax officials. Certainly, it is a rare taxpayer who is prejudiced by the failure of either the assessor or the auditor to affix their respective oaths or certificates as required by Sections 80—7—9 and 80—5—30, U. C. A. 1943. See *Telonis* v. *Staley et al.*, 104 Utah 505, 106 P. 2d 163, on rehearing 104 Utah 537, 144 P. 2d 513. In fact, it is rare that a taxpayer even knows of these requirements. It is the attorney who, in scouting through the tax record for infirmities, discovers these omissions, most time years afterward.

I cite the omission of this certificate of the auditor, the omission of which was held in the Telonis' case to be fatal, simply as an example and compare the certificate and oath which must be attached by the auditor under Sec. 80—7—9 with that required by Sec. 80—5—30 of the assessor. A penalty of stoppage of salary is visited upon the assessor for failure to attach the affidavit required by Sec. 80—5—30, but the section expressly provides that "a failure to make or subscribe such affidavit, or any affidavit, will not in any manner affect the validity of the assessment." Yet, from the duties required of the two officers, it would seem that the duty to honestly, correctly and diligently assess according to law would be more or just as vital to the taxpayer as the duty of the auditor to record and transmit honestly and correctly alterations in the assessment roll authorized by the board of equalization.

Our decisions have been based on the theory that tax officials are agents with very limited powers and unless these powers are strictly followed there is a departure from the agency which invalidates the acts of the officials. But acts required of tax officials vary in nature. The omissions or misdoings in some cases may be very prejudicial to the taxpayer. Others sink to the level of office administrative duties, such as entries in books. Between these types, there are duties, the failure to fully or correctly discharge which may or may not be prejudicial to the taxpayer.

Acts fundamental to the laying of an ad valorem tax are:

(1) Correct, conscientious and fair assessments;

(2) Opportunities to correct inequities in assessments;

(3) The levy, which is largely mathematical;

(4) Opportunities to redeem or reclaim the property at one or more points along the line;

(5) Adequate notification of assessment, meetings of

equalization boards, the levy or amount of tax due, date of delinquency, May sales and other dates when the taxpayer may rescue his property; all of them go according to a statutory time table of which the taxpayer may have to take notice.

I do not pretend that the above is a complete list of the salient operations in the tax procedure structure, but it suffices for the argument.

Were strict compliance required in these matters, whilst in other matters where there was a claimed lapse, the taxpayer might be required to show an actual prejudice due to the dereliction, it might result in a sensible, workable and sufficiently protective system. This, with some relaxation of the "buyer beware" principle applied to purchase of tax titles, would seem sufficiently to protect the taxpayer's interest and at the same time serve the interest of the public in obtaining from each taxpayer the fulfillment of his duty to pay taxes on pain of suffering another to take over in his place and thus protect the urgency of public revenues.

LATIMER, Justice (concurring in the results).

I concur in the results.

It is not possible to give the words used in Section 104—2—5.10, Chapter 19, Laws of Utah 1943, their ordinary meaning and arrive at a legislative intent with any reasonable degree of certainty. Almost every suggested rearrangement of words or phrases brings about absurd results and creates irreconcilable conflicts with other statutory enactments. It would serve no useful purpose to set out all the reasons why the Legislature could not have intended that result. It is sufficient for my purposes to say that even when tested by every known rule of construction, the act is indefinite, uncertain, inconsistent, muddled and confused. Regardless of which rule is ap-

plied, property rights which should be protected are either destroyed, barred or impaired without good reason. While I believe the Legislature only intended to prescribe for a short statute of limitation the enactment goes far beyond that and under certain circumstances prevents the courts from considering questions affecting title to property.

It can be assumed that the Legislature did not intend to deny to courts the authority to adjudicate property rights by barring both causes of actions and defenses, but that is what the section states and any attempt to construe it to escape that result only brings about other absurdities.

I recognize that our duty requires that if, by applications of known or accepted rules of construction, we can determine the legislative intent with any degree of certainty, we should do so. My difficulty in this case is that when I stay within the framework of the act and give the words their ordinary and acceptable meaning uncertainty, inconsistency and vagueness exist.

In the enactment of a statute reasonable precision is required. Certainty need not be absolute and the courts should not invalidate legislative acts because they are inaccurately drawn or because the expressions used are awkward, clumsy or wanting in precision. However, if uncertainty and vagueness cannot be removed, or if removed, the legislative intent is still unascertainable, then the act should be declared void and inoperative.

In 50 Am. Juris., Paragraph 472, Statutes, the general rule which I prefer to follow is stated as follows: "Indefiniteness and Uncertainty.—In the enactment of statutes reasonable precision is required. Indeed, one of the prime requisites of any statute is certainty, and legislative enactments may be declared by the courts to be inoperative and void for uncertainty in the meaning thereof. This power may be exercised where the statute is so incomplete, or so

irreconcilably conflicting, or so vague or indefinite, that the statute cannot be executed and the court is unable, by the application of known and accepted rules of construction, to determine what the Legislature intended, with any reasonable degree of certainty.   *   *   *"

The infirmities in the section cannot be cured without its being completely revised and this is a legislative function.   I, therefore, conclude the act is unenforceable.